68 N.J. Super. 457 (1961)
172 A.2d 715
JOSEPH SPIOTTA, PLAINTIFF-RESPONDENT,
v.
SHELTER COVE ESTATES, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT, AND REID CONTRACTING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1961.
Decided July 3, 1961.
*459 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. David A. Friedman argued the cause for appellant (Mr. Sido L. Ridolfi, attorney).
Mr. Benjamin Wasserman argued the cause for respondent.
*460 The opinion of the court was delivered by FOLEY, J.A.D.
Defendant Reid Contracting Co., Inc. appeals from a final judgment in a foreclosure action.
The basic facts are not in dispute. On April 9, 1958 defendant corporation sold a tract of unimproved land in Ocean County, N.J. to Shelter Cove Estates, a corporation. The purchase price was $245,000 of which $100,000 was paid at the closing, the balance being secured by a purchase money second mortgage of $145,000. Concurrently, plaintiff loaned Shelter Cove Estates $100,000 in exchange for a two-year purchase money first mortgage of $150,000 with interest at 6% per annum. The $100,000 was immediately turned over to Andrew B. Reid, president of Reid Contracting Co., Inc., as part consideration for the sale of the property. The remaining $50,000 was retained by plaintiff as a premium. All parties were present at the closing.
The second mortgage contains the following recital:
"This is a second mortgage under and subject to a first mortgage given this date on the aforesaid described premises by Shelter Cove Estates to Joseph Spiotta * * *."
On October 1, 1959 plaintiff instituted these proceedings, Shelter Cove having defaulted in the payment of interest and taxes. At this time the principal sum allegedly due had been reduced to $100,500. Shelter Cove did not answer and on February 3, 1960 a default was entered as to it.
Defendant Reid filed an answer admitting the priority of plaintiff's mortgage and averred that it had "no information sufficient to form a belief with regard to the allegations contained in plaintiff's complaint and [left] plaintiff to its proofs as to the amounts due it * * *." Further, defendant requested that its lien be reported upon. The answer contained no allegations whatever affirmatively attacking the validity of plaintiff's mortgage, or the legality of the transaction of which it was an outgrowth.
On or before February 15, 1960 plaintiff and defendant submitted their respective bonds, mortgages and affidavits *461 to Standing Master William H. Donnelly for an adjudication of the amount due on each mortgage, pursuant to R.R. 4:82-3. Reid's proofs were accompanied by a letter from its president in which, according to the standing master, he took "the position that the first mortgagee should be put to formal proof on the amount due on the mortgage." Thereupon, the proofs were returned and plaintiff advised that it would be necessary for him to move for a summary judgment in the Chancery Division, the standing master noting that there "is a presumption that the amount stated in the mortgage is the true amount but if Mr. Reid objects he has the burden of overcoming this presumption * * *."
Pursuant to this direction plaintiff moved for summary judgment under R.R. 4:58 and supported his motion with his affidavit in which he alleged his version of the facts relating to the transaction, and verified an attached schedule which detailed the payments received on account of the claimed indebtedness of $150,000, the accrual of interest and the balance of principal and interest due as of June 1, 1960.
In resisting the motion defendant filed an affidavit of its president, in which he deposed that he was "fully familiar with the transactions which led to the giving of a purchase money mortgage by the defendant, Shelter Cove Estates to plaintiff herein, and the giving of a second purchase money bond and mortgage in the sum of $140,000 to Reid Contracting Co., Inc., on the same date * * *." Mr. Reid went on to state that so far as he knew plaintiff "only gave defendant Shelter Cove Estates the sum of $100,000 at the time of the execution and delivery by Shelter Cove Estates, of its bond and mortgage for the sum of $150,000." He stated further that the purpose of the motion for summary judgment was "to enrich the plaintiff to an extent far beyond what he is entitled to," and concluded by urging that plaintiff be "put to his proof concerning the amounts of money actually paid by him to defendant, Shelter Cove Estates, in consideration for the *462 execution and delivery by Shelter Cove Estates, to plaintiff, of the purchase money bond and mortgage in the sum of $150,000."
At this point we deem it advisable to assess the state of the pleadings and proofs before the trial court in light of the principles governing the determination of a motion for summary judgment. The complaint and plaintiff's supporting affidavit, as described, clearly made out a prima facie case entitling plaintiff to a judgment determining that the amount due on the first mortgage was as claimed. R.R. 4:82-3 provides that the plaintiff's proof in a foreclosure action "may be submitted on affidavit * * * unless the court or standing master requires other proof." However, it confers no right on a subsequent mortgagee to demand proof other than by affidavit. Hence, as the standing master said, defendant became burdened with going forward with proof by affidavit, or otherwise, to controvert plaintiff's case, to the extent that a palpably genuine issue of fact would appear by reason of conflicting evidence.
The affidavit of Mr. Reid in our judgment did not constitute such proof. It recited merely that he understood that plaintiff had advanced only $100,000 for the mortgage of $150,000 (a fact which plaintiff readily conceded in open court), and that plaintiff would be unjustly enriched if his lien was fixed on the basis of the face amount of the bond and mortgage. In this connection we note that unjust enrichment was not pleaded as an affirmative defense nor was usury so pleaded. Plainly, compliance with R.R. 4:8-3 requires the pleading of matters constituting an avoidance or affirmative defense. It is noted also that usury was not mentioned in Mr. Reid's affidavit. It is pertinent also to observe that had defendant desired to avail itself of the liberal pretrial discovery procedures permitted by our rules to sustain its burden of overcoming the presumption running in favor of plaintiff by reason of the prima facie showing of the validity of his claim, it was free to do so. See *463 Robbins v. Jersey City, 23 N.J. 229 (1957); R.R. 4:58-3, R.R. 4:58-7.
It is settled that on a motion for summary judgment it is the movant's burden to exclude any reasonable doubt as to the existence of a palpably genuine issue of material fact; that all inferences of doubt are drawn against the movant in favor of the opponent of the motion; and that the papers supporting the motion are closely scrutinized and the opposing papers are indulgently treated. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
However, as was said in Judson "if the opposing party offers no affidavits or matter in opposition, or only facts which are immaterial or of an insubstantial nature, a mere scintilla, 5 Vanderbilt L. Rev. 607, 613 (1952), `fanciful, frivolous, gauzy or merely suspicious,' 6 Moore, Federal Practice, par. 56.13(3), he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact." 17 N.J., at p. 75.
Defendant argued below, and reargues here, that the disparity of $50,000 between the amount advanced by plaintiff and the face amount of the bond and mortgage, of itself, required a plenary trial in order that defendant might examine plaintiff as to the circumstances of the loan transaction. It is true that "the telltale factor of demeanor in the presence of the trier of fact often assumes such vital importance in such cases that the opposing party should generally not be denied the opportunity to have the moving party, or its officers, appear on the witness stand before the trier of fact." Judson, supra, 17 N.J., at p. 76. But this rule is operative only when the testimony if taken would be relevant to an issue raised by the pleadings, e.g., a defense of fraud, usury or the like. As previously noted, defendant chose not to raise any such issue by its answer. Thus, if a plenary trial were held it would serve only to establish *464 that plaintiff advanced to Shelter Cove $100,000, and received therefor its bond that it would pay plaintiff $150,000 within two years with 6% interest, and a mortgage to secure the obligation. These facts were not in dispute and of themselves did not deprive the plaintiff's case of prima facie integrity, absent an affirmative defense pleaded by defendant, supported by affidavit.
We are, therefore, firmly of the opinion that on the papers before the trial court, i.e., the complaint, answer, and affidavits, the plaintiff was entitled to summary judgment.
Unfortunately, in the course of colloquy on the motion, the question of unjust enrichment, though not pleaded, crept into the case. It obscured the issue determinative of the motion, namely, whether on the pleadings and supporting proof a palpably genuine issue of fact appeared, and subsequently it spawned a question of usury, again not pleaded.
These trespassing questions have precipitated this appeal. They seem to have developed as follows. The motion was heard on June 17, 1960. As plaintiff's attorney outlined the facts in his oral argument, it immediately became clear that plaintiff had received what was tantamount to a $50,000 premium, for the loan of $100,000 for a two-year period. Notwithstanding the fact that Mr. Reid in his affidavit had deposed that he was "fully familiar" with the three transactions simultaneously completed, i.e., (1) the bond and first mortgage given to plaintiff by Shelter Cove in the amount of $150,000, (2) the payment by plaintiff of $100,000 to Shelter Cove, and (3) the immediate transfer of this amount to defendant, together with a second mortgage specifically subordinated to plaintiff's first mortgage, the trial court in rather strong language expressed the views that if plaintiff's motion were to be granted he would be unjustly enriched by $50,000, and that plaintiff was not entitled to a lien larger than the amount loaned. At the request of plaintiff's attorney the matter was laid over in order that he might brief these questions.
*465 The hearing was resumed on July 1. In the interim plaintiff had filed a brief which had been considered by the trial judge, but defendant's attorney filed its brief that morning, and the judge stated that he had not had an opportunity to read it. The following colloquy was then had:
"The Court: * * * I know the burden was on Mr. Wasserman and now my mind has been changed by his cogent brief and now the burden is on you, Mr. Breitkopf.
Mr. Wasserman: He says the defendant is not pleading usury as a defense. If he is not pleading usury then he is pleading nothing then. If he is not pleading usury what is he pleading? He says: `Although the defendant is not pleading usury as a defense * * *.' What defense does he plead? None.
The Court: He is contending unjust enrichment and a few other things he dredged up from somewhere.
Mr. Wasserman: To that we say we delivered $100,000 to a corporation which corporation turned the whole $100,000 over to Reid, every penny. That's all they got. They knew we were charging $50,000 more and in their mortgage it says they shall be second to our mortgage. Heiring and Grasso drew the papers for the first mortgage, for the second mortgage, and the deed.
The Court: I am familiar with the facts.
Mr. Wasserman: It was all one parcel. Even without usury they are estopped. They took our money. They saw what we were doing and they said nothing, and the usury statute plainly says a corporation can not plead usury and those in privity or those that come after that can't plead usury where the corporation can not.
The Court: That's what the cases seem to say that you have used.
Mr. Wasserman: That's what they say, and I have had a half dozen cases on that in the last 10 years.
The Court: At the moment you are not losing, either.
Mr. Breitkopf: Your Honor, we are not concerned on this question of usury but we are concerned about the fact that we knew nothing about the fact of the usurious conduct of the mortgagor.
The Court: I raise an eyebrow at that statement.
Mr. Breitkopf: We were there. The mortgage was given of $150,000, and that's what we thought was paid over. We didn't know $100,000 in cash was paid to Shelter Cove. It becomes a question of fact. This is for summary judgment on an answer. We filed an answer to the effect that we didn't know what the consideration was."
The court reserved decision and subsequently granted plaintiff's motion, and judgment in his favor was entered. The *466 trial judge delivered no opinion either written or oral. Hence, we have no way of ascertaining the reasoning which formed the basis of the judgment.
The appeal, as presented to us, initially advances the argument that a factual question existed of whether the loan to Shelter Cove by plaintiff was usurious, because a factual question also existed of whether Shelter Cove was formed as a corporation, merely to cloak the individuals comprising it, with corporate appearance for the purpose of circumventing the usury statute R.S. 31:1-6 which provides:
"No corporation shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation."
The law is clear that the bar of a plea of usury by a corporation extends to the interposition of this defense by the holders of subsequent encumbrances. The source of R.S. 31:1-6 is L. 1902, c. 144 which was cast in substantially the same language. Four years later, in interpreting this statute, it was said in Lembeck v. Jarvis Terminal Cold Storage Co., 70 N.J. Eq. 757, 761-762 (E. & A. 1906):
"It is obvious, however, that the statute was passed to protect those that had made loans of money, and had taken the paper or bonds of a corporation. As to such creditors it was doubtless intended to abolish the defence of usury in toto. It seems obvious that if a subsequent encumbrancer can still attack a claim of such creditors on the ground of usury, the act itself could be easily defeated. * * *
The rule in respect to the rights of those who hold interests derived from a mortgagor to attack a previous mortgage for usury is defined in the case of Warwick v. Dawes, 26 N.J. Eq. * * * 548, 553. * * * `Unless the mortgagor, or those who, in this respect, have the right to represent him, chooses to interpose the statute as a defence, the mortgage will remain a legal encumbrance upon the land embraced in it.'"
The rule thus enunciated has been consistently followed by our courts. See Commercial Funding Corp. v. Melroy Const. Co., 106 N.J. Eq. 11, 12 (Ch. 1930), Liebers v. Plainfield, *467 etc., Building Co., 108 N.J. Eq. 391, 393 (Ch. 1931), Corradini v. V. & M. Holding Corp., 34 N.J. Super. 427, 433 (Ch. Div. 1955).
To escape the consequences of these established principles defendant urges that if a plenary trial were permitted it might be shown that the corporation was a mere cloaking device in which event, defendant argues, the uncloaked individuals would have the right to interpose the defense of usury, and derivatively the defendant would acquire the same right. In this connection defendant lays stress on the dictum in In re Greenberg, 21 N.J. 213, 220 (1956), that in Gelber v. Kugel's Tavern, Inc., 10 N.J. 191 (1952), the court had "served notice that use of the corporate shell to cloak a loan which was actually being made to an individual borrower would in nowise be permitted to defeat the usury laws of our State." Reference to the Gelber case discloses that the claim of usury was pleaded by the defendants, individual makers and endorsers, by way of counterclaim to a suit for collection of a loan ostensibly made to a corporation. The counterclaim was predicated on the thesis that the loan, patently usurious, was made to the individual makers and that the corporation was a cloak. The case holds no more than that this is a cognizable subject of defense or counterclaim if it is properly raised. Again in Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205 (App. Div. 1959), also relied on by defendant, usury was affirmatively pleaded. The court recognized the rule enunciated in Greenberg, supra, and Gelber, supra, but held that the proof did not support the claim that the corporation was a shell created to avoid the operation of the usury statute.
Feller demonstrates the weakness of defendant's argument here made. As we have already observed, the state of the pleadings and the proofs upon which the judgment was entered provided no basis for the claim of usury, nor for the theory of the "corporate cloak" upon which the claim of usury was necessarily posited.
*468 But to go further, even if defendant be excused for not having affirmatively pleaded the defense of usury, there is no basis in the pleadings and affidavit for finding that a palpably genuine issue of fact exists of whether Shelter Cove Estates was designed by its incorporators to avoid the usury statute. Thus, the claim of usury, if it be now entertained, is not supported by the proof of "corporate cloak" which might bring it within the doctrine of Greenberg, Gelber and Feller, supra. Absent such proof the defense of usury is clearly barred by Lembeck, supra, and the cases following it which are cited hereinabove.
Affirmed.