In the Matter of Robert Dale
JOHNSON, Bankrupt.

Bruce GOLDSTEIN, Successor to S. David Rubenstein, Receiver in Bankruptcy, Appellant,

v.

McLEAN BANK, Appellee.

No. 76–1411.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1976.
Decided April 5, 1977.

Gregory U. Evans, Arlington, Va. (James H. Simmonds, Simmonds, Coleburn, Towner & Carman, Arlington, Va., on brief), for appellant.

Bernard S. Cohen, Alexandria, Va. (Stephen D. Annand, Cohen and Vitt, P. C., Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Circuit Judge, CRAVEN, Circuit Judge, and FIELD, Senior Circuit Judge.

CRAVEN, Circuit Judge:

The Receiver in the bankruptcy of Robert D. Johnson brought an adversary proceeding to collect a cashier's check in the amount of $776,590 issued by the McLean Bank. The Bank defended, not upon the instrument,[1] but under Section 68 of the Bankruptcy Act, 11 U.S.C. § 108. It sought to have set-off against its obligation to pay the cashier's check its even larger counterdemand against the bankrupt as guarantor of certain notes which had been pledged to it by the original obligees. The district court allowed the set-off; and for the reasons set forth below we affirm.

### I.

Robert D. Johnson, the bankrupt, successfully worked for years a massive, multi-million dollar fraud, involving the sale of fictitious wine import franchises. So long as each new round of investors paid in enough, Johnson was able to pay out what appeared to be lucrative, guaranteed returns to the old. As a result of those guarantees, the McLean Bank held as collateral security (for loans made to investors in Johnson's scheme) notes payable to its borrowers, which Johnson had personally guaranteed.

In June of 1974 Johnson decided to end the swindle operation and flee the country. On June 6, 1974, he converted most of the general deposits he had at the McLean Bank into a cashier's check in the amount of $776,560, with himself as payee. On June 12, 1974, the Bank learned enough to cause it to advise its borrowers that it had

reason to fear that the Johnson-backed collateral was worthless and that, pursuant to their loan agreement, either substitution of collateral or payment of the notes would be necessary.

On June 13, 1974, an involuntary petition in bankruptcy was filed against Johnson. By then Johnson had abandoned his plans to abscond, and on that day he endorsed the cashier's check to his attorney (as "trustee") with the apparent desire that he collect the instrument and turn the proceeds over to the proper authorities for the benefit of his creditors. The attorney immediately deposited the check for collection with the American Security and Trust Company.

On June 14, 1974, the Bank dishonored the check on the asserted ground that it believed the "bankruptcy receiver-trustee" to be entitled to the proceeds. That same day Johnson's attorney endorsed the cashier's check over to the Receiver. On June 18, 1974, the Receiver himself presented the check for payment. This time the Bank dishonored and claimed a right of set-off. Thus the Receiver sued to compel the Bank to honor its obligation and to pay interest thereon.

Subsequently, the Bank and its borrowers settled their dispute. A provision of that settlement was that the Bank "retain" full ownership of the collateral notes upon which Johnson was obligated. In effect, the borrowers were credited with the full face value of the collateral.

### II.

Where "mutual debts" exist between the estate of the bankrupt and a creditor, Section 68, set out in the margin,[2] provides that

---

1. While the Bank does argue that it was entitled to countermand or dishonor the check, it is still with the design of exercising a claim of set-off—but with the difference that it would be against general deposits of the bankrupt instead of the cashier's check. However, we agree with the district court that the Bank may not dishonor its cashier's check. *See* section II. B. *infra.*

2. § 68. *Set-Offs and Counterclaims.*

a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such

set-off "shall" occur and that only the balance need be paid or allowed. Section 68(b), however, requires that a creditor's claim be both "provable and allowable" in the traditional bankruptcy sense and that it not have been obtained for the purpose of preference. The Receiver contests the conclusion below that Section 68 applies to the facts of this case for two principal reasons. First, he asserts that the debts sought to be set-off are not "mutual" ones, since the Bank was in debt to the estate of the bankrupt, while the estate was in debt to the borrowers of the Bank. Secondly, he asserts that the very concept of set-off is inapposite where, as here, a debt arises upon a negotiable instrument and there is no proper defense upon the instrument itself. *See* note 1 *supra.*

### A. *Mutuality*

■ The Bank was, at the very least, a *transferee* of the unendorsed order instruments which Johnson, the bankrupt, had personally guaranteed. Therefore, by virtue of its proof that it took the notes in proper transactions with *holders* thereof and the "shelter" provisions of Va. Code Ann. § 8.3–201,[3] the Bank succeeded to the rights of its transferors as holders of the instruments, to the full extent of its security interest. And a holder of an instrument, whether or not the true owner, may enforce payment thereon and discharge the paying party (unless a third party has the payment enjoined or satisfactorily indemnifies the

obligor). Va. Code Ann. §§ 8.3–301 & 603(1). Thus, if the Bank could demand payment from Johnson when due, it follows that it was entitled to file in its own right a proof of claim in bankruptcy. It did so in effect by asserting a set-off, since Section 68 provides that only the *balance* of mutual claims can be allowed.

■ It is the Receiver's argument, however, that any right of the Bank to enforce payment of the pledged notes was conditioned by its status as a secured party under Virginia law. Va. Code Ann. § 8.9. It is true that the Virginia Code seems to contemplate that the right of a secured party to sell, exchange, or collect "collateral" accrues only upon default (unless otherwise agreed), *see, e. g.,* Va. Code Ann. §§ 8.9–501 through 504; whereas, none of the notes here, either principal or collateral, were in default when the Bank claimed its right of set-off against the bankrupt.

A secured party *in possession,* however, constitutes somewhat of an exception to the normal scheme of orderly collection *upon default.* Va. Code Ann. § 8.9–501(1). The pledgee of an instrument, for example, has the active duty under § 8.9–207(1)[4] of "taking necessary steps to preserve rights against prior parties unless otherwise agreed." The Official Comment makes it clear that:

> Subsection (1) states the duty to preserve collateral imposed on a pledgee at common law. See Restatement of Security, §§ 17, 18.

---

filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.
11 U.S.C. § 108.

**3.** § 8.3–201. *Transfer; right to indorsement.* —(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

(2) A transfer of a security interest in an instrument vests the foregoing rights in the transferee to the extent of the interest transferred.

(3) Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.

**4.** § 8.9–207. *Rights and duties when collateral is in secured party's possession.*—(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

While § 18 of the Restatement ("Pledgee's Duty to Collect Instruments") provides:

> In the case of insolvency proceedings known to the pledgee he is responsible for *filing a proof of claim* within the stipulated time for asserting claims unless he enables the pledgor to file such claim.

Restatement of Security, § 18 at 66 (1941) (emphasis added). Clearly, then, the insolvency of Johnson triggered the Bank's privilege (and possibly its duty), not only to file a proof of claim, but in the alternative to assert any available set-off: that being an even more effective mode of preserving the full value of the collateral for its own benefit and that of its pledgor.

Nor was the initial immaturity of Johnson's obligation upon the collateral notes a bar to the Bank's right of set-off. Insolvency, by itself, has long been considered a sufficient excuse for a court of equity to step in and set-off a solvent party's claim upon *unmatured* notes—"not only as between the parties but as against a receiver, an assignee for the benefit of creditors, [and] *a trustee in bankruptcy* . . . ." *United States v. Bank of Shelby*, 68 F.2d 538, 539 (5th Cir. 1934) (emphasis added). *See Schuler v. Israel*, 120 U.S. 506, 7 S.Ct. 648, 30 L.Ed. 707 (1887); *Childress v. Jordan*, 107 Va. 275, 276–277, 58 S.E. 563, 564 (1907).

 On the other hand, Section 68 itself requires for set-off only that a claim be "provable against the estate and allowable under subdivision g of section 93 of this title [concerning preferences]." And the Chandler Act of 1938 has included among debts which may be proved even "contingent debts and contingent contractual liabilities," Section 63(a)(8), 11 U.S.C. § 103(a)(8), provided that any such unliquidated or contingent claim is judged by the bankruptcy court to be capable of liquidation or reasonable estimation. Section 63d, 11 U.S.C. § 103d, & Section 57d, 11 U.S.C. § 93d. In other words, the provability of so-called contingent claims is currently judged by the "strictly practical attribute of liquidity." 3 Collier on Bankruptcy, ¶ 57.15 at 253 (1976). *See also* 4 Collier on Bankruptcy, ¶ 68.11 (1975). And the claim of the Bank is clearly liquid. For not only is the obligation of a guarantor for a sum certain, but in addition, where the guarantor (like Johnson) has guaranteed payment of the note, his obligation is indistinguishable from that of a co-maker, since he is deemed to have waived any right of presentment and protest. Va. Code Ann. § 8.3–416(1). *Moore v. Simms*, 257 F. 540, 542 (6th Cir. 1918) (all contingency is removed where a guarantor guarantees payment "as fully and to the same effect" as if he were a co-maker); *In re Buzzini & Co.*, 183 F. 827 (S.D.N.Y.1910). In effect, therefore, at the time of set-off the Bank's claim was both *fixed* and liquidated. *Cf. Maynard v. Elliott*, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931) (the liability of an endorser who has *not* waived presentment and protest is still practically fixed, since the contingency of notice of dishonor is within the creditor's control) and *In re Philip Semmer Glass Co.*, 135 F. 77 (2d Cir. 1905).

### B. *Set-Off Against an Instrument*

The Receiver also contends that the claim of the bankrupt's estate upon the cashier's check is immune from set-off because of the Virginia substantive law governing the existence of the claim.

 Simply stated, the position of the Receiver is that his claim upon the instrument is subject only to those "defenses," within the meaning of Va. Code Ann. §§ 8.3–305(2) & 306(c), which Virginia law gives the Bank, depending on whether the Receiver is deemed a holder by endorsement or attribution (subject to the "defenses" of the Bank under § 8.3–306(b)) or a holder in due course by attribution (subject to the "defenses" of the Bank as a party with whom its transferor dealt under § 8.3–305(2)). Whichever the case, the Receiver maintains that a set-off (arising from a separate transaction), such as the Bank asserts here, is not an available "defense" within the meaning of the statute. *Bank of Wyandotte v. Woodrow*, 394 F.Supp. 550 (W.D.Mo.1975); *cf. Stegel v. Union Bank*

*and Trust Co.*, 163 Va. 417, 416 S.E. 438 (1934).

The Bank would limit the *Wyandotte* case to its facts, since it involves a holder in due course of a cashier's check *who had no dealing with the maker.* We are inclined to agree with the Receiver, however, that the case stands for more; for we read it as asserting correctly that set-off is also unavailable as a code defense against either a holder or a holder in due course with whom the party has dealt.[5]

But unavailability of set-off as a *defense on the instrument* in no way precludes its use as a *defense to the recovery* sought. Indeed, properly considered, set-off—unlike recoupment—does not go to the foundation or justice of a plaintiff's claim. Instead, it embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action; and as such it constitutes a defense only in the practical sense that it operates to reduce the remedy—rather than the debt. *See* 80 C.J.S. "Set-Off and Counterclaim" §§ 1–5 (1953). In effect, the Bank must honor its cashier's check and pay the Receiver, but in the course of doing so it may set-off the guaranty obligations of the Receiver's bankrupt against the amount of the cashier's check.

 It is Section 68 alone that determines "whether a set-off of existing obligations may be effected or sustained in bankruptcy . . . ." 4 Collier on Bankruptcy, ¶ 68.06 at 886.1 (1975). And a set-off of "mutual" claims under Section 68 is surely permissive, if it is not compulsory. *Cf. Studley v. Boylston Nat'l Bank of Boston,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913) (the trustee *must* set-off mutual claims).

On the other hand, it is true that where a trustee (or receiver), rather than merely succeeding to some claim of the bankrupt, has acquired a claim *in his own right* against a creditor of the bankrupt, their two claims are not considered "mutual" for purposes of a Section 68 set-off. 4 Collier on Bankruptcy, ¶¶ 67.94[2.7] at 867 & 68.-10[1] at 895 (1975). For example, set-off is not allowed where the trustee's claim is founded on his extraordinary power to avoid transactions otherwise binding on the bankrupt himself, *e. g.,* where the creditor seeking set-off was the recipient of a preferential or fraudulent transfer from the bankrupt. Section 60, 11 U.S.C. § 96; Section 70e, 11 U.S.C. § 110e.

The trustee's claim in such a case is an original—and not a derivative—one; therefore, when he asserts it, he is not to be viewed as "standing in the shoes of the bankrupt" for the purpose of set-off. *United States v. Roth,* 164 F.2d 575, 578 (2d Cir. 1948). *Cf. Hood v. Brownlee,* 62 F.2d 675 (4th Cir. 1933).

 Here the Receiver *is* merely the bankrupt's successor in interest: the cashier's check was endorsed to his order under the compulsion of Section 70(a), 11 U.S.C. § 110(a), whereby the trustee in bankruptcy is "vested by operation of law with *the title of the bankrupt* as of the date of the filing of the petition." (Emphasis added.) Because he took the cashier's check under § 70(a), and not independently as a bona fide purchaser, he holds it "subject to all valid claims, liens and *equities.*" 4A Collier on Bankruptcy, ¶ 70.04 at 55 (1976) (emphasis added). *Howard Johnson, Inc. of Fla. v. Tucker,* 157 F.2d 959, 962 (5th Cir. 1946); *Martin v. N. Y. Life Ins. Co.,* 104 F.2d 573,

---

**5.** Nor do we feel that the Bank had a right of dishonor based on its theory that the check was *fraudulently* obtained in the first place as part of Johnson's plan to abscond. Cashier's checks, drawn by a bank upon itself, are sometimes spoken of as "accepted in advance by the act of issuance," so that any notion of dishonor seems foreign to their make-up. *Swiss Credit Bank v. Virginia National Bank-Fairfax,* 538 F.2d 587, 588 (4th Cir. 1976); *Ross v. Peck Iron & Metal Co., Inc.,* 264 F.2d 262, 269 (4th Cir.

1959). While we concede that that is not necessarily so where a payee (rather than a bona fide purchaser) seeks to collect a cashier's check that he has fraudulently obtained from the issuer, *see TPO, Inc. v. Federal Deposit Insurance Corp.,* 487 F.2d 131 (3d Cir. 1973), we do not find the requisite degree of fraud present here, since the Bank was paid in full for the check. *See Bank of Wyandotte v. Woodrow, supra,* 394 F.Supp. at 555.

 

574 (7th Cir. 1939). And set-off, in origin and theory, is a creature of equity.

Accordingly, the decision of the district court will be

*AFFIRMED.*