FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Community Guardian Bank, in Receivership, Plaintiff,

v.

MODULAR HOMES, INC., et al., Defendants.

Civ. A. No. 92–5492.

United States District Court, D. New Jersey.

Aug. 1, 1994.

Gerald A. Liloia, Glenn D. Curving, Conrad G. Cyriax, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for plaintiff.

Michael Walker, Higgins & Walker, Ringwood, NJ, for defendants.

## OPINION

WOLIN, District Judge.

Before the Court is the motion of plaintiff, Federal Deposit Insurance Corporation ("FDIC"). A plethora of issues arises out of what seems to be a simple motion by the FDIC to dismiss affirmative defenses raised by the defendants, Modular Homes, Inc., t/a Excel Homes, William & Rosalind Higgins, and Hugh and Margaret Walsh (collectively "Modular"), in response to the FDIC's foreclosure action. The FDIC argues that based on the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. section 1821(d), the Court lacks subject matter jurisdiction over Modular's defenses. In response, defendants assert that the FDIC has not complied with the notice provisions of FIRREA. Further, they seek dismissal of FDIC's foreclosure action, per Rule 37 of the Federal Rules of Civil Procedure, for the FDIC's alleged failure to comply with discovery. For the reasons that follow, the Court will grant in part and deny in part the FDIC's motion. Additionally, the Court will deny the defendant's cross-motion to dismiss pursuant to Rule 37.

## BACKGROUND

In 1986, Modular Homes, Inc. borrowed $200,000 from Community Guardian Bank ("CGB" or "Bank"). The loan was secured by a lien on property located in Glen Rock, New Jersey, as well as the personal guarantees of defendants William and Rosalind Higgins and Hugh and Margaret Walsh. *See* Higgins Affidavit ¶ 3. After some business deals fell through, Modular experienced financial difficulty and therefore, in 1990, they entered into negotiations with CGB concerning the outstanding loans. *Id.* at ¶ 6.

Modular allegedly came to an agreement with CGB whereby Modular would give the Bank the deed to the Glen Rock property in lieu of foreclosure. *Id.* According to Modular, all was settled; the Bank, however, made additional demands of Modular regarding the deeds of the properties in question. *Id.* at ¶ 13. In October 1990, after extensive efforts to comply with the Bank's demands, Modular received a general release from liability covering some property in Vernon, New Jersey. *Id.* at ¶ 18. The Bank, however, refused to release the defendants with respect to the Glen Rock property until defendants could perfect the subdivision of the property. *Id.*

After extensive negotiations with the adjacent property owners in Glen Rock, in January 1991, Modular succeeded in completing an agreement with a neighboring land owner that would allow Modular to perfect the subdivision. *Id.* at ¶ 20. In May of 1991 Modular notified CGB that as soon as the adjacent property owner was given a release from his bank, Modular was prepared to close on the property, thereby assuring CGB that the subdivision plan was virtually completed. *Id.* at ¶ 21.

In July 1991, the Commissioner of Banking of the State of New Jersey took possession of CGB thereby assuming its assets. *Id.* at ¶ 22. On July 19, 1991, the plaintiff, the FDIC pursuant to their appointment as receiver for CGB, acquired all rights, titles, powers, and privileges of the bank. Plaintiff's Memorandum of Law in Support of Motion to Dismiss Defendant's Affirmative Defenses at pg. 2. In a letter sent in October of 1991, the FDIC notified the defendant of the receivership, and instructed the defendant to present all claims against the Bank within thirty days of receipt. *Id.* at pg. 3; *see also* Higgins Affidavit at ¶ 23.

On November 1, 1991, Modular presented claims to the FDIC explaining that the defendants were personal guarantors on a Note secured by real property. The proof of claim went on to state that the CGB had agreed to accept the deed to land in Glen Rock in lieu of pursuing foreclosure actions. Higgins Affidavit at ¶ 24. Subsequently, on November 12, 1991, the defendants received a form letter from the FDIC notifying Modular that its claim was disallowed. *Id.* at ¶ 25. In response to the FDIC's November 12th letter, defendants explained that because they received the FDIC's original letter concerning bringing proof of claims on October 28, 1991, "it was virtually impossible to file a Proof of Claim by the original deadline of October 25, 1991." Defendant's Memorandum of Law, Exhibit A at pg. 14. Modular's letter concluded by asking the FDIC to advise them accordingly. *Id.*

In July 1992, plaintiff filed two actions against Modular: a foreclosure action based on a mortgage from September 1989, and an action to recover on a floating rate note which was dated September 1989 as well. Modular was served in August, and in September, Modular made the FDIC an offer of settlement which paralleled the arrangement Modular had made with CGB to avoid foreclosure and personal liability. Higgins Affidavit at ¶¶ 29–30.

In September 1992, over ten months after having received the notice of disallowance from the FDIC, Modular filed its answer and separate affirmative defenses, which it subsequently amended to include a counterclaim and jury demand. Plaintiff's Memorandum of Law at p. 3. On October 30, 1992 the plaintiff removed the note action to this court pursuant to 12 U.S.C. section 1819(b)(2)(B). The foreclosure action was subsequently removed on December 30, 1992, and the actions were consolidated *sua sponte* on April 26, 1993.

## DISCUSSION

The first question presented stems out of the plaintiff's motion to dismiss Modular's

affirmative defenses. The FDIC argues that this Court lacks subject matter jurisdiction. Modular responds by questioning the validity of the notice the FDIC provided to them with respect to notification of the disallowance of Modular's claim.

Additionally, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Modular has made a cross-motion against the FDIC claiming that the FDIC's actions against Modular should be dismissed due to the FDIC's failure to comply with discovery orders.

## I. Defenses

This Court will take a two-tier approach to dealing with Modular's defenses. First the court will examine the legal sufficiency of the defenses. Next, the court will analyze the effect FIRREA has on the assertion of each remaining defenses.

### A. Defenses That Will Be Dismissed By The Court

■ Rule 12(f) of the Federal Rules of Civil Procedure states: "upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense . . . ." Fed.R.Civ.P. 12(f). If a defense cannot succeed under any set of circumstances alleged, the defense may be deemed insufficient as a matter of law. *See In re Sunrise Securities Litigation,* 818 F.Supp. 830, 840 (E.D.Pa.1993).

A Rule 12(f) motion is not meant to determine unclear or disputed questions of law. *Id.; United States v. Fairchild Industries, Inc.,* 766 F.Supp. 405, 408 (D.Md.1991) ("when there is any question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with"). In fact, motions to strike are disfavored because of their "dilatory character." *United States v. Kramer,* 757 F.Supp. 397, 409–410 (D.N.J.1991). Nevertheless, courts have recognized that such motions may serve to hasten resolution of cases by eliminating the need for discovery, which in turn saves time and litigation expenses. *See Van Schouwen v. Connaught Corp.,* 782 F.Supp. 1240 (N.D.Ill.1991) (explaining that "when the insufficiency of a defense is clearly

apparent, a motion to strike can help the litigants clear away redundant clutter"); *FDIC v. White,* 828 F.Supp. 304, 307 (D.N.J. 1993); *Glenside West Corp. v. Exxon Corp.,* 761 F.Supp. 1100, 1115 (D.N.J.1991). Motions to strike, however, will only be granted "when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading." *Glenside,* 761 F.Supp. at 1115 (citations omitted). By striking a defense *sua sponte,* the court can insure that its limited time will not be expended in litigating meritless defenses.

■ This Court finds no basis for Modular's collateral estoppel defense. Before collateral estoppel can be raised there must have been a prior adjudication of the merits of the issue by the party against whom collateral estoppel is being invoked. *See Parklane Hosiery v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Since there has been no prior adjudication of this issue the defense of collateral estoppel is unavailable.

■ Similarly, Modular's defense of laches will be stricken. Modular could not successfully assert the defense of laches as it has been well established that laches cannot be maintained in suits brought by the federal government. *See Bostwick Irrigation Dist. v. United States,* 900 F.2d 1285, 1291 (8th Cir.1990) (citing *Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938); *United States v. Brown,* 835 F.2d 176 (8th Cir.1987)).

■ This Court will also dismiss Modular's assertions that "[t]he claim of the plaintiff cannot be superior to that of his assignor and since the assignor's claim is barred, the plaintiff' claim is also barred" (hereinafter "superior claim"), that the FDIC is guilty of "wrongful conduct," and that the FDIC committed "willful default." Affirmative defenses are pleadings; therefore, they are subject to Federal Rule of Civil Procedure 8(a), which calls for the pleader to "set forth a 'short and plain statement,' Fed.R.Civ.Pro. 8(a), of the defense." *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989) (citing *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.

1982)); *see also Baker v. City of Detroit,* 483 F.Supp. 919 (E.D.Mich.1979) (explaining that rules of pleading are applicable to affirmative defenses), *aff'd sub nom. Bratton v. City of Detroit,* 704 F.2d 878 (6th Cir.1983), *on reh'g,* 712 F.2d 222 (6th Cir.1983), *and cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). Defenses that are "nothing but bare bones conclusory allegations" can be stricken. *See Heller Financial, Inc.,* 883 F.2d 1286 at 1295 (holding that defenses which do not present questions of law or fact can be stricken); *cf. Levine v. County of Westchester,* 828 F.Supp. 238, 241 (S.D.N.Y.1993) (dismissing plaintiff's allegations because they contained "only conclusory, vague, and general factual allegations," which failed to provide the court with an "adequate basis to discern the plaintiff's claims"), *aff'd,* 22 F.3d 1090 (2d Cir.1994). Modular failed to present questions of law in their assertions; rather, defendants made legal conclusions and have presented only vague allegations. Therefore, the Court will strike the defenses of "superior claim," wrongful conduct, and willful default.

## B. Defenses and the Administrative Claims Process

In 1989 Congress enacted FIRREA, which effectively serves to limit the federal courts' jurisdiction over claims arising out of the receivership of failed financial institutions. "Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required." *Meliezer v. RTC,* 952 F.2d 879, 882 (5th Cir.1992); *see also Rosa v. RTC,* 938 F.2d 383, 391 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

FIRREA permits judicial review of claims against a failed institution only as the Act itself provides. *R.T.C. v. Shoreview Builders,* 252 N.J.Super. 408, 415, 599 A.2d 1291 (1991), citing *Circle Industries v. City Feder-*al *Savings Bank,* 749 F.Supp. 447, 453–454 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2d Cir. 1991). The Act provides that judicial involvement is only available after exhaustion of a streamlined administrative process. 12 U.S.C. § 1821(d)(16)(A). Section 1821(d)(13)(D) [1] implicitly establishes a mandatory administrative claims procedure. *See Praxis Properties Inc. v. Colonial v. Bank,* 947 F.2d 49, 63 (3d Cir.1991); *FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir.1991); *Rosa,* 938 F.2d at 391. While courts are in unanimous agreement that section 1821(d)(13)(D) makes the administrative claims remedy exclusive, they are divided over whether that section applies to affirmative defenses. *See, e.g., FDIC v. Updike,* 814 F.Supp. 1035, 1039 (D.Wyo.1993) (holding that affirmative defenses, like claims, are subject to exhaustion requirements of FIRREA); *RTC v. Schonacher,* 844 F.Supp. 689, 692–94 (D.Kan.1994) (holding that affirmative defenses which are dependent on the claim being asserted against the defendant are not subject to the exhaustion requirements of FIRREA).

In a recent decision, the Third Circuit held that affirmative defenses are not included within the ambit of section 1821(d)(13)(D). Accordingly, they do not have to be raised through the administrative claims process. *National Union Fire Insurance Co. v. City Savings,* 28 F.3d 376, 392–393 (3d Cir.1994) [hereinafter "1994 WL 313110"]. The Court concluded that "the plain meaning of the language contained in § 1821(d)(13)(D) indicates that the statute does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim." *Id.*

Explaining that whether a defense could have been brought independently as an affirmative claim is irrelevant, the court announced that defenses must not be precluded by FIRREA for two reasons. *Id.* at 394–395. First, the due process implications of barring

---

1. Section 1821(d)(13)(D) provides that
   Except as otherwise provided in this subsection, no court shall have jurisdiction over—
   (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including the assets which the [FDIC] may acquire from itself as such receiver; or
   (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

defenses were of concern. *Id.* The Third Circuit refused to interpret FIRREA as preventing defendants from asserting defenses since often, defendants are debtors and do not receive notice of the claims process. *See* § 1821(d)(3)(b) (stating that the RTC only has to notify creditors of the failed financial institution about the time for bringing claims and the administrative claims process). "[I]nterpreting the jurisdictional bar in such a manner," the court noted, "would, in a substantial number of cases ... result in an unconstitutional deprivation of due process," as the defendant stands to lose property without having an opportunity to be heard. *National Union Fire Ins. Co.,* 28 F.3d at 394–395 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–30, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982)).

Second, the Third Circuit pronounced that it would be unfair to prevent a defendant from putting forth defenses. *Id.* Without the ability to assert defenses, the defendant "would invariably lose on the merits of the claims brought against them." *Id.* Moreover, it would be unreasonable to require defendants to submit all potential defenses through the claims process. *Id.* "Since a party cannot know what her defense is until she hears the claim leveled against her it would be nearly impossible for a party to submit future hypothetical defenses to the administrative claims procedure." *Id.* Interpreting FIRREA in a manner that would preclude the assertion of defenses "would lead to the patently absurd consequence of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC." *Id.* (quoting *RTC v. Conner,* 817 F.Supp. 98, 102 (W.D.Okla.1993)).

The Third Circuit instructed courts to examine the substance of defenses by delving beyond the bare assertion of the defendant. *Id.,* 28 F.3d at 393–394. This means that a defendant will not be allowed "to avoid the procedural bar of § 1821(d)(13)(D) by simply labelling what is actually a counterclaim as a defense or affirmative defense." *Id.* Rather, the Court must look to applicable state law, *cf. O'Melveny & Myers v. FDIC,* ——

U.S. ——, ——, 114 S.Ct. 2048, 2052–54, 129 L.Ed.2d 67 (1994) (holding that state law applies to claims brought pursuant to FIRREA), to determine whether the defendant's assertion can fairly be characterized as a defense. *National Union Fire Ins. Co.,* 28 F.3d at 393–394.

Modular has asserted the following nine defenses: failure to state a claim upon which relief can be granted, promissory estoppel, accord and satisfaction, undue influence, unjust enrichment, failure to comply with a condition of a contract, breach of contract, misrepresentation, and set-off. With the exception of set-off, this Court will entertain Modular's defenses.

Modular's first defense is based on Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) states that the defense of failure to state a claim upon which relief may be granted can be raised by a motion. Fed.R.Civ.P. 12(b)(6). Since there is a federal rule on point which recognizes that failure to state a claim upon which relief can be granted is a defense, Modular will be permitted to raise this defense without first resorting to the administrative claims process. *See Hanna v. Plumer,* 380 U.S. 460, 469–70, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965).

New Jersey law recognizes that most of Modular's other assertions are affirmative defenses. *See Checker Van Lines v. Siltek Int'l, Ltd.,* 169 N.J.Super. 102, 106–07, 404 A.2d 333 (1979) (referring to promissory estoppel as a defense); N.J. Rules Governing Civil Practice in the Superior Court, Tax Court and Surrogate's Courts [hereinafter "N.J. Civil Practice Rules"] R. 4:5–4 (listing estoppel, accord and satisfaction as affirmative defenses); *Peter W. Kero, Inc. v. Terminal Constr. Corp.,* 6 N.J. 361, 372–73, 78 A.2d 814 (1951) (treating accord and satisfaction as an affirmative defense); *Turner v. Cole,* 116 N.J.Eq. 368, 373, 173 A. 613 (N.J.Ch. 1934), *aff'd,* 118 N.J.Eq. 497, 179 A. 113 (1935) (referring to undue influence as an affirmative defense); *Spiotta v. Shelter Cove Estates,* 68 N.J.Super. 457, 462, 172 A.2d 715 (1961) (treating unjust enrichment as an affirmative defense); *Bacon v. American Ins. Co.,* 131 N.J.Super. 450, 454, 330 A.2d 389 (Law Div.1974), *aff'd,* 138 N.J.Super. 550, 351

A.2d 771 (1976) (treating failure to comply with a condition of a contract as an affirmative defense); *Altshul v. Astor Coal Distrib., Inc.*, 125 N.J.L. 543, 16 A.2d 619 (1940) (treating breach of contract as an affirmative defense); *Leisure Technology v. Klingbeil,* 137 N.J.Super. 353, 355, 349 A.2d 96 (1975) (treating breach of contract as an affirmative defense); *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 535–36, 582 A.2d 1257 (1990) (treating misrepresentation as an affirmative defense). Therefore, in order to provide Modular with their due process rights, and in order to allow them an opportunity to defend on the merits of the case, this Court must exercise jurisdiction over Modular's defenses and affirmative defenses regardless of whether they complied with the administrative claims process.

■ Modular's assertion of set-off as an affirmative defense, however, presents the Court with a dilemma. Although at first glance the Court is tempted to allow Modular to assert set-off as a defense, after a closer examination of the nature of set-off, this initial impulse is easily overcome.

Generally, set-off is not considered to be an affirmative defense.[2] *See In re Johnson,* 552 F.2d 1072, 1078 (4th Cir.1977). "Properly considered, set-off—unlike recoupment—does not go to the foundation or justice of a plaintiff's claim. Instead, it embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action; and as such it constitutes a defense only in the practical sense that it operates to reduce the remedy rather than the debt." *Id.* at 1078 (citing 80 C.J.S. §§ 1–5 (1953)).

Although set-off has occasionally been referred to as a defense, *see Guarantee Co. of N. America v. Tandy & Allen Constr. Co.,* 76 N.J.Super. 274, 279, 184 A.2d 426 (1962) (referring to set-off as an affirmative defense), more often, New Jersey courts have treated set-off as a counterclaim, and have specifically distinguished set-off from affirmative defenses. *See Naylor v. Smith,* 63 N.J.L. 596, 597, 44 A. 649 (1899) (stating "The words 'defense or plea' do not so aptly describe the

remedy of set-off as to take precedence over an intelligent construction of their context. Indeed, in strictness, 'set-off' is not a defense at all, since it neither destroys the plaintiff's right of action nor denies that the amount claimed is due. On the contrary, it passes these defenses for the purpose of exhibiting a cause of action against the plaintiff. This is not a defense; it is an adjustment"); *see also Schwartz & Nagle v. Central Brewing Co.,* 125 N.J.L. 565, 17 A.2d 166 (N.J.Sup.Ct.1941) (treating set-off as a claim); *Stone v. New Jersey & H.R. Ry & Ferry Co.,* 75 N.J.L. 172, 173, 66 A. 1072 (N.J.Sup.Ct.1907) (treating set-off as a claim); *H. John Homan Co. v. Wilkes–Barre,* 233 N.J.Super. 91, 92, 558 A.2d 42 (1989) (differentiating between a defense and set-off by discussing whether a debtor had a defense or set-off).

New Jersey Civil Practice Rules further require that "[i]f a party has mistakenly designated a defense as a counterclaim ... the court, on terms if the interest of justice requires, shall treat the pleading as if there had been a proper designation." N.J. Civil Practice Rules R. 4:5–4. In theory, this rule parallels the Third Circuit's requirement that courts examine the defendant's assertions to ensure that the defenses raised are recognized as defenses. *National Union Fire Ins. Co.,* 28 F.3d at 393–394.

Section 1821(d)(13)(D) is unambiguous with respect to the assertion of claims. It provides that "no court shall have jurisdiction" over claims seeking a determination of rights vis-a-vis the assets of the failed institution, or over claims relating to the acts of the institution or its receiver. § 1821(d)(13)(D); *See FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.,* 808 F.Supp. 1263, 1280 (E.D.La.1992) (explaining that § 1821(d)(13)(D) leaves no room for interpretation concerning jurisdiction over claims). This section of FIRREA must be understood to bar courts from hearing claims governed by the administrative process. Because set-off is a counterclaim, unless it was presented to the FDIC first via the administrative claims process, the Court lacks jurisdiction.

---

**2.** Set-off is defined as "[a] counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of the plaintiff's cause of action." Black's Law Dictionary 1372 (6th ed. 1990).

Modular presented its claim to the FDIC on November 1, 1991. The FDIC notified Modular that its claim was disallowed on November 12, 1991.

This, however, is not the end of the inquiry of whether this Court has jurisdiction. FIRREA provides that if the claimant does not act within sixty days of the notice of disallowance to either file her claim in district court or request an administrative hearing, the claimant is forever barred from raising it.

## II. The Effect of Effective Notice On Defendant's Assertion of Set–Off

■ Modular questions what constitutes an effective notice of disallowance. FIRREA requires the FDIC to notify a claimant whether her claim has been allowed or disallowed 180 days after the claim is filed. § 1821(d)(5)(A)(i). If the claim is disallowed the FDIC must state all the reasons for the disallowance, and must further tell the claimant about the available procedures for review of the disallowance. § 1821(d)(5)(A)(iv). The claimant then has sixty days to act.[3] The claimant can either request an administrative hearing concerning the disallowance, or the claimant may file suit in a *de novo* action.[4] § 1821(d)(6)(A). If, however, the claimant fails to act, the claim is forever barred. § 1821(d)(6)(B).

Modular concedes that they received a form notice of the FDIC's disallowance of their claim on or about November 12, 1991. *See* Higgins Affidavit ¶ 25. Modular then asserts that they proceeded by writing a letter to the FDIC questioning a mix-up with respect to the date required to file a Proof of Claim. *Id.; see also* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss the Separate Affirmative Defenses and Counterclaims, Exhibit A at 14. By failing to respond to its letter, Modular concludes, the FDIC tolled the sixty-day period for bringing *de novo* claims or seeking

administrative relief after disallowance of a claim.

The fact of the matter is Modular slumbered on their rights. Admittedly, the defendants were aware of their need to act as they received the FDIC's letter notifying them that they had sixty days to move. Notwithstanding, Modular failed to act on the FDIC's letter of disallowance as proscribed in FIRREA within that time period.

Modular's insinuation that the letter sent to the FDIC served to toll the sixty-day period is without any legal merit. This reflects the fact that after a claim has been disallowed, the claimant has only two courses of action. *See* § 1821(d)(6)(B). Modular neither requested *de novo* review in district court, nor requested an appeal in an administrative setting. *See* §§ 1821(d)(6)(A) and 1821(d)(7). Rather, Modular's letter dated November 15, 1991, only informed the FDIC that Modular did not have sufficient time to file the Proof of Claim as requested by the FDIC in their original letter to the defendants. The Court rejects Modular's argument that their letter tolled the sixty-day appeal provision because it suggests that a claimant has a third option. There is no support for this proposition in either the language of the statute or case law.

Indeed, defendants' November 15th letter to the FDIC does not seem to have any bearing on the disallowance; therefore, it will not toll the sixty day limit on Modular's claims. This finding is consistent with the Congressional intent of FIRREA, which was to allow for the disposition of claims against failed institutions in a fair and efficient manner. *See Praxis*, 947 F.2d at 64 (citing H.R.Rep. No 101–54(I), 101st Cong. 1st Sess. 1 at 419, 1989 USCAAN 86, 215). Congress passed FIRREA specifically to expedite claims against failed institutions; therefore, to provide Modular with a stay of action, or to find that by writing a letter to the FDIC

---

**3.** The sixty-day period begins to run "on the earlier of—(i) the end of the period described in paragraph (5)(A)(i) [lapse of 180 days] with respect to any claim against a depository institution for which the Corporation is receiver; or (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i)...." § 1821(d)(6)(A)(i–ii).

**4.** The de novo action may be brought in the district court where the depository institution maintains its principal place of business, or alternatively, in the District Court for the District of Columbia. § 1821(d)(6)(A).

Modular's sixty-day limitation on claims was tolled, would be to effectively contradict Congressional directives.

Because Modular failed to follow the administrative claims procedures mandated by FIRREA, despite receiving proper notice from the FDIC, the Court finds that Modular's assertion of set-off, which is subject to the exhaustion requirements of FIRREA, is time-barred and this Court does not have jurisdiction over it.

### III. Defendant's Cross Motion to Have Plaintiff's Action Dismissed for Failure to Comply with Discovery Pursuant to Rule 37

Modular cross-moves to have the FDIC's complaint dismissed alleging that the FDIC has not complied with discovery. This cross-motion is procedurally improper. Thus, the court will not grant defendant's cross-motion.

■ Local Rule 12(C) for the District Court of New Jersey states "A cross-motion related to the subject matter of the original motion may be filed by the responding party together with that party's opposition and may be noticed for hearing on the same date as the original motion...." Local District Crt. Rule 12(C). The defendant's cross-motion cannot be entertained by the Court at this juncture, because it does not relate to the subject matter of the FDIC's motion to dismiss Modular's affirmative defenses.

■ Even, assuming arguendo, that there was some relationship between the Modular's cross-motion and the FDIC's motion, the Court would not be obliged to entertain Modular's motion. Local Rule 15 for the District Court of New Jersey outlines procedures which must be adhered to by parties seeking sanctions against one another. Rule 15(E)(2) requires that counsel confer concerning discovery disputes, and in the event a dispute cannot be ironed out by the attorneys themselves, Rule 15(E)(2) instructs counsel to confer with the Magistrate Judge. N.J.Ct.R. 15(E)(2). The rule concludes by stating "this presentation shall precede any formal motion." *Id.*

Modular maintains that at a conference with Judge Pisano on June 18, 1993, Judge Pisano issued an order compelling the FDIC to respond to Modular's discovery requests. Walker Affidavit at ¶ 15. Modular does not provide the Court with a copy of this order nor does it provide the Court with any subsequent judicial decree requiring the FDIC to submit to Modular's requests.

Additionally, there is no evidence of there being a discovery dispute between the parties that led Modular to turn to the Court for relief. Although on July 22, 1993, Modular sent the FDIC's attorney a letter complaining that the FDIC failed to cooperate with discovery, this letter in and of itself cannot be construed as a conference between the parties that led to a dispute. *See* Reply Affidavit of Conrad G. Cyriax, Exhibit B. Furthermore, Modular did not turn to the Court to seek relief after this "dispute" arose and before the institution of this cross-motion. Therefore, this Court is not at liberty to dismiss the case at hand prior to Modular's compliance with the Local District Court Rules.

### CONCLUSION

The Court will strike the defenses of collateral estoppel and laches pursuant to Federal Rule of Civil Procedure 12(f). The defenses of superior claim, wrongful conduct, and willful default pursuant to Federal Rule of Civil Procedure 12(f) will be dismissed without prejudice, thus providing defendants an opportunity to amend their answer to comply with Federal Rule of Civil Procedure 8(a). FIRREA, which imposes mandatory exhaustion requirements over claims and actions, will not preclude Modular from raising the defenses of failure to state a claim upon which relief can be granted, promissory estoppel, accord and satisfaction, undue influence, unjust enrichment, failure to comply with a condition of a contract, breach of contract, and misrepresentation. Given the FDIC's compliance with FIRREA's notice guidelines, however, Modular will not be permitted to assert set-off. Finally, this court refuses to grant defendant's cross-motion for dismissal since Modular failed to follow the procedures outlined in the Local District Court Rules.