GUSTAV W. LEMBECK

*v.*

JARVIS TERMINAL COLD STORAGE COMPANY.

On appeals of Natalie Jarvis and Erie Railroad Company.

[Submitted December 12th, 1905. Decided June 18th, 1906.]

1. The title of *bona fide* holders of coupon mortgage bonds issued by a corporation and payable to bearer, which are taken before maturity, is like the title to commercial paper so taken, good against all secret equities claimed by the corporation or third party.

2. A person claimed that there was an agreement between her and a corporation that she should have seven bonds of a proposed issue of $150,000 mortgage bonds; the seven bonds were never delivered to her or set apart for her, but the entire issue came to the hands of holders for value who received them without notice of the claim.—*Held,* that the title of the holders was complete.

3. Since the act of 1902 (*P. L. 1902 p. 459*), providing that no corporation shall set up the defence of usury in an action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation, no junior mortgagee can set up the defence of usury against an older mortgagee, as he is precluded from setting up a defence which the mortgagor could not interpose.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Garrison, whose opinion is reported in *69 N. J. Eq. 450.*

*Messrs. McDermott & Enright,* for the appellant Natalie Jarvis.

*Messrs. Collins & Corbin,* for the appellant Erie Railroad Company.

*Mr. Alfred A. Wheat* and *Mr. Pierre F. Cook,* for Young & Irvin.

The opinion of the court was delivered by

REED, J.

The cause, as entitled, is a suit to have the Jarvis Terminal Cold Storage Company decreed insolvent and to have a receiver appointed.

The appeals bring up orders made in the cause relating to the distribution of the assets of the insolvent company. The first is an appeal taken from an order made by the court of chancery on a petition of Natalie Jarvis. The facts involved in that appeal are fully stated by the learned vice-chancellor, in his opinion, reported in *69 N. J. Eq. 450.* It appears that the property of the insolvent company was encumbered by a mortgage for $150,000, made to secure one hundred and fifty bonds. There is in court, as the product of the sale of the mortgaged property by the receiver, the sum of $7,668.28, which sum the holders of the secured bonds are entitled to have divided among them. Mrs. Jarvis claims that she is entitled to share in the distribution as the holder of seven of these $1,000 bonds. Her alleged claim arises in this way: She was the owner of the land upon which the cold storage plant was constructed and when that company purchased the land, it gave her, in part payment, a mortgage upon the property for $14,000. The company afterwards, wishing to make a first mortgage for $150,000, already mentioned, induced Mrs. Jarvis to cancel her $14,000 mortgage under an agreement, as it is insisted, that she should receive $7,000 in cash and for the remaining $7,000 a sixty-day note of the corporation, secured by seven of the $1,000 bonds to be issued under the security of the $150,000 mortgage. She never received these bonds, nor were they set apart for her.

The following is a brief history of the disposition of this issue of $150,000 of bonds: By the provision of the trust mortgage $125,000 of the bonds were to be issued at once and the remaining $25,000 was to be issued for addition and extension of the works of the company, but were to be used only when a certificate that the work was completed was executed by the company and delivered to the trustee under the mortgage, who

was to deliver the bonds. The first issue of $125,000 was all taken by persons who had subscribed for them and paid for them eighty-eight per cent. on the dollar. The issue of $25,000 was regularly certified and was delivered to the trust company which had advanced to the cold storage company the sum of $20,000. By reason of some dispute between Mr. Jarvis, representing the storage company, and the trust company, respecting the custody of the subscription agreement, the trust company announced its intention to hold the $25,000 bond issue then in its possession as an additional security for $15,500 owing by the storage company. Some time after this the trust company surrendered five of the twenty-five bonds to the Crane company as collateral to secure a debt owing by the cold storage company to the Crane company. Subsequently, it was agreed that the remaining twenty bonds should be held by the trust company, as collateral security, in consideration of the trust company making additional advances of money sufficient to pay the accruing interest on the $125,000 issue of bonds. This money was advanced by the trust company.

After the insolvency of the cold storage company, a new corporation was formed to take over the property from the purchasers at the receiver's sale. One hundred and thirty of the bonds were assigned to Young & Irvin by the holders thereof in exchange for an equal amount of bonds in the new company. The twenty bonds held by the trust company were assigned to Young & Irvin for a similar consideration.

It is to be remarked that these bonds were unmatured coupon bonds, payable to the bearer or registered holder thereof, in 1925. They were negotiable so far as the *bona fide* possessor would be held to have a good title. *Morris Canal and Banking Co.* v. *Fisher, 9 N. J. Eq. (1 Stock.) 667.* The title of the purchaser of such a security for a valuable consideration has the qualities of the title of the holder of commercial paper. *Boyd* v. *Kennedy, 38 N. J. Law (9 Vr.) 146.* Now, the five bonds placed with Crane were sold for $2,481. To whom does not appear, but the title to them is now in Young & Irvin. The title to the twenty bonds is also in Young & Irvin. If they are *bona fide* purchasers, or if they got title through a *bona fide*

purchaser, their title is perfect against all latent equities, including that of Mrs. Jarvis. Now, it is not pretended that Young & Irvin had any notice of the claim of Mrs. Jarvis to any of these bonds, unless such notice arose from something appearing in the proceedings of insolvency, before their purchase of the bonds. Nothing had occurred in those proceedings to warn them of such a claim. The claim put in to the receiver by Mrs. Jarvis contained no allusion to a right to seven bonds of this issue, or to any bond whatever. So Young & Irvin, or the new corporation, for whom they seemed to have purchased, are *bona fide* holders.

Indeed, so far as concerns the five bonds deposited with the Crane company, they were sold by the company, passed to some purchaser undisclosed, whose title was good, and then passed to Young & Irvin. Respecting the twenty bonds held by the trust company, they would seem, even if deposited as collateral security for an antecedent debt, to have been held by a good title against unknown equities. The holder of commercial paper, taken for a precedent debt in payment thereof or as security, is a *bona fide* holder for valuable consideration, and entitled to protection as such. *Brooklyn City, &c., Railroad Co.* v. *National Bank, 102 U. S. 14; reaffirming Swift* v. *Tyson, 16 Pet. 1; Allaire* v. *Hartshorne, 21 N. J. Law (1 Zab.) 665,* decided in this court, adopting the doctrine of *Swift* v. *Tyson; Oliphant* v. *Vannest, 58 N. J. Law (29 Vr.) 162.*

Negotiable bonds, like these in question, stand upon the same footing, as to transfer and as to the title of the holder, as commercial paper. *McMurray* v. *Moran, 134 U. S. 150, 158.*

But this question is not in the case, for the trust company advanced money at the time it was agreed that they should retain the twenty bonds as security, and the amount due is in excess of the face value of the bonds. The corporation had the right to borrow the money for the payment of interest on its bonds and for the completion of its plant, and had the right to pledge its bonds to secure such loan. *Duncomb* v. *New York, Housatonic and Northern Railroad Co., 84 N. Y. 190, 202; Cook Corp. § 762; Coleb. Col. § 43.* And the *bona fide* pledgee has the same rights as a *bona fide* purchaser to the extent of his

interest in the pledge. *Thompson* v. *St. Nicholas National Bank, 146 U. S. 240; Cook Corp.* § *473.* But whether those from whom Young & Irvin got the bonds were or were not *bona fide* holders for value, Young & Irvin were such, and as such their title to them is perfect against the latent equity of Mrs. Jarvis.

Upon this ground the order of the court of chancery excluding Mrs. Jarvis from participation in the fund in court is affirmed.

An appeal is also taken by the Erie Railroad Company, who holds a mortgage upon the property of the insolvent corporation subsequent to the mortgage given to secure the $150,000 bond issue. The counsel for this appellant made a point that inasmuch as $125,000 of the bonds were issued by the cold storage company to purchasers who paid eighty-eight per cent. only of the par value of the bonds, therefore the holders of the bonds, by force of the Usury act, are entitled to a lien for only eighty-eight per cent. of $125,000. They have already received credit for $110,000, which amounts to eighty-eight per cent. by the application of this amount upon the consideration paid the receiver at the sale of the corporate property. The insistence is that, by force of the Usury act, the bondholders could not maintain an action against the cold storage company to recover more than eighty-eight per cent. of the face value of these bonds.

But against this position the bondholders invoke the provision of the act relating to usury passed in 1902. *P. L. 1902 p. 459.* This act reads as follows:

"No corporation shall hereafter plead or set up the defence of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation."

The view of the counsel for the Erie railroad is that inasmuch as the present proceeding is not an action brought against the corporation, therefore the provision of the statute does not control in the present instance. It is obvious, however, that the statute was passed to protect those that had made loans of money and had taken the paper or bonds of a corporation. As to such creditors it was doubtless intended to abolish the defence of

usury *in toto*. It seems obvious that if a subsequent encumbrancer can still attack a claim of such creditors on the ground of usury; the act itself could be easily defeated. Nor do I think that such a construction of the act has a logical foundation in our decision.

The rule in respect to the rights of those who hold interests derived from a mortgagor to attack a previous mortgage for usury is defined in the case of *Warwick* v. *Dawes, 26 N. J. Eq.* (*11 C. E. Gr.*) *548, 553*. Chief-Justice Beasley, speaking for the court of errors respecting the doctrine laid down by Chancellor Green in *Brolasky* v. *Miller, 9 N. J. Eq.* (*1 Stock.*) *812*, proceeded to say: "The rule there propounded is that although the statute declares a mortgage founded upon a usurious contract to be void, such instrument, nevertheless, is voidable only by the mortgagor and those claiming under him and invested with his rights. Unless the mortgagor, or those who in this respect have the right to represent him, chooses to interpose the statute as a defence, the mortgage will remain a legal encumbrance upon the land embraced in it." In the case of *Warrick* v. *Dawes, supra*, it was held that a usurious mortgage may, by the act of the parties to it, be so purged of the legal taint that it would stand as a legal security against the mortgages of all persons subsequently acquiring interest under the mortgagor.

Now, it is perceived, by the doctrine of this case, the right of the Erie railroad to raise the question of usury rests upon the right of the mortgagor to do so at the time the last mortgage was made. The Jarvis Cold Storage Company, being stripped of the right by the statute to raise the question of usury, no such right passed to the Erie railroad by the execution of the subsequent mortgage. This is along the same line as the conclusion reached in *Perrine* v. *First National Bank, 55 N. J. Law* (*26 Vr.*) *402*.

There are statutes in several states prohibiting the defence of usury on the part of corporations, and concerning them Mr. Cook remarks that in all the states the courts go to the extreme in defeating this defence, if possible. *Cook Corp.* § *766b*. Concerning the New York statute, it is to be remarked that in the case of *Vigilancia, 68 Fed. Rep. 781*, a New York corpora-

tion had issued its bonds at eighty cents on the dollar, and creditors who held judgments subsequent to the mortgage securing these bonds, attacked the bonds as having been issued usuriously. It was held, however, in the federal district court, and afterwards in the circuit court of appeals (*73 Fed. Rep. 452*), that the New York act shut off not only the corporation itself, but all creditors of the corporation, from availing themselves of the statute of usury.

It has been thought useful to dispose of this question as it was involved in this appeal, although, as is admitted by the appellant, the previous conclusion, holding that the last issue of twenty-five bonds was valid, leads to the same result, namely, that the appellant has no interest in the fund in court.

I may remark, also, that the result reached also disposes of another appeal taken by the Erie Railroad Company from a previous order in the insolvency proceedings, an order making allowances out of the fund of $25,000, which was paid into the court as part of the consideration of the sale of the mortgaged property by the receiver. The appeal was taken from an order of the court of chancery allowing, out of this $25,000, the payment of the expenses of the administration in the insolvency proceedings, allowing counsel fees to the solicitors of the complainants, of the receiver and commissions to the receiver himself. Inasmuch as it appears that the Erie Railroad Company would have no interest in the fund, even if it were still $25,000, it can have no interest in the depletion of that fund, and so that appeal must be dismissed.

*For affirmance*—The Chief-Justice, Garrison, Fort, Garretson, Hendrickson, Pitney, Swayze, Reed, Bogert, Vredenburgh, Vroom, Green, Gray, Dill—14.

