76 N.J. 434 (1978)
388 A.2d 582
GIRARD ACCEPTANCE CORPORATION, PLAINTIFF-RESPONDENT,
v.
EDWARD W. WALLACE AND LAURETTA WALLACE, HIS WIFE, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued October 17, 1977.
Decided May 31, 1978.
*435 Mr. Russell Piccoli argued the cause for appellants (Ms. Jane B. Cordo, Executive Director, Ocean-Monmouth Legal Services, Inc., attorney).
Mr. George J. Weinroth argued the cause for respondent (Messrs. Greenberg, Schmerelson, Greenberg and Weinroth, attorneys).
Mrs. Erminie L. Conley, Deputy Attorney General, argued the cause for amicus curiae Department of Banking (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Steven P. McCabe submitted a brief on behalf of amicus curiae Legal Services of New Jersey, Inc.
The opinion of the court was delivered by SCHREIBER, J.
*436 Defendants Edward W. Wallace and Lauretta Wallace, husband and wife, in defense of plaintiff Girard Acceptance Corporation's foreclosure action on two mortgages on two separate tracts of land, contended that the mortgages were unenforceable and the underlying obligation was void because of violations of the Secondary Mortgage Loan Act, N.J.S.A. 17:11A-34 et seq. The trial court granted the plaintiff's motion for summary judgment. On appeal the Appellate Division affirmed. 141 N.J. Super. 171 (1976). We granted defendants' petition for certification. 72 N.J. 458 (1976).
The complaint asserted that the defendants were indebted to the plaintiff in the sum of $5,888.64 per a written obligation dated February 17, 1972, providing for payment of the debt in installments, that defendants had defaulted "within the terms" of the obligation and that plaintiff elected the entire principal balance to be due and payable. It was also alleged that the defendants had executed mortgages on two separate tracts of land in the Township of Plumsted, Ocean County, to secure the payment of the obligation. In its prayer for relief plaintiff sought a judgment for the amount due, foreclosure of the defendants' equity of redemption, sheriff's sales of the lands and payment to the plaintiff of the sums due. The defendants' answer admitted all the allegations of the complaint and set forth two separate defenses asserting violations of the Secondary Mortgage Loan Act, N.J.S.A. 17:11A-44(a) and N.J.S.A. 17:11A-51(a) and (c).
Plaintiff moved for summary judgment, relying only upon the admissions in the answer. Defendants also moved for summary judgment, relying upon the contract entered into by the defendants. On the return day no evidence was taken and no affidavits submitted. We deduce the following from this sparse record.
There are four contract documents, each dated February 17, 1972, and each executed by the defendant: (1) an Installment Sale and Security Agreement (Agreement) with *437 Whelan Pontiac-Buick, Inc. which consisted of two pages; (2) a note, which was physically a part of the Agreement document, payable to the plaintiff Girard Acceptance Corporation; and (3) two mortgages executed by the defendants as mortgagors and the plaintiff Girard Acceptance Corporation as mortgagee.
The Agreement recited that Whelan Pontiac-Buick, Inc. (Seller) had on February 17, 1972 delivered to the defendants a used 1969 Cadillac for a cash selling price of $3295. The down payment was $19.50. There were numerous additional charges such as the New Jersey sales tax and the fees for recording the mortgages. The time balance due was $5,888.64. The total deferred payment price was $6,008.14, which the defendants agreed to pay in 48 consecutive equal monthly payments. The Seller reserved title in the automobile and was empowered upon default to take immediate possession and sell the car. The Agreement specified "Recorded Mortgage Against Real Estate" as other collateral. The terms also stated:
It is intended and agreed that the Buyers on even date are signing a mortgage and time note for the balance due, which mortgage may be recorded immediately, but no foreclosure shall issue thereon unless there shall be a default under this agreement.
The note, which was set forth at the foot of the first page of the Agreement, recited that for value received the defendants agreed to pay to the order of the plaintiff 48 consecutive installments of $122.68, or a total of $5,888.64. It also stated that upon default, the entire principal balance would become due.
On the second page of the Agreement, there was a statement to the effect that any provision found to be invalid would not affect the validity of the remaining provisions. Beneath that was an assignment without recourse executed by the Seller to the plaintiff Girard Acceptance Corporation.
*438 The two mortgages were on forms in which the plaintiff's name was imprinted as mortgagee. Each stated that the mortgage was security for the indebtedness of $5,888.64 (the time balance due in the Agreement). The defendants' acknowledgments also appeared on the mortgages which had been recorded in the Ocean County Clerk's Office. On the facing sheet of each mortgage appeared the words "Auto Financing."
The issue presented to the trial court was whether the transaction was a "loan" within the framework of the Secondary Mortgage Loan Act or a "sale" subject to the Retail Installment Sales Act of 1960, N.J.S.A. 17:16C-1 et seq. The trial court observed that if the defendants had borrowed the funds from the plaintiff and then used the money to pay for the car the transaction would clearly have been subject to the Secondary Mortgage Loan Act. But it reasoned that since the plaintiff knew of the sale of the car at the time it advanced the funds, the financing was not subject to the Secondary Mortgage Loan Act. Commenting that the difference seemed "a frivolous distinction," but that nevertheless the decision of Public Acceptance Corp. v. Taylor, 127 N.J. Super. 323 (App. Div. 1974), was controlling, the trial court reluctantly concluded that the transaction was a sale and not a loan.
In affirming, the Appellate Division also concluded that the transaction involved a sale and not a loan, that placing a second mortgage on real property to finance the purchase of an automobile was not an evil at which the Secondary Mortgage Loan Act was directed and that the Legislature intended that such a sale be regulated by the Retail Installment Sales Act. The Appellate Division also rejected the defendants' contention that certain modifications in the definition of "loan" made in the Secondary Mortgage Loan Act made it manifest that retail installment sales which involved second mortgages on realty were within the scope of that act.
*439 Functionally, one cannot label the transaction as a sale and not a loan or a loan and not a sale.[1] What occurred was a transfer of the vehicle and the simultaneous financing of that transfer. An installment sale has the same characteristics  a change in possession of the goods and the advance of credit to the person acquiring the merchandise. Mindful, then, that the transaction has the characteristics of and involves a sale and a loan, we must examine the two statutes, Retail Installment Sales Act and the Secondary Mortgage Loan Act, to determine whether one or the other or both govern.
Both acts are part of a package of laws designed to protect consumers from overreaching by others, to protect consumers from overextending their own resources and also to promote the availability of financing to purchase various goods and services. Among such laws are the Installment Loan Act, N.J.S.A. 17:9A-53 et seq.; the Advance Loan Act, N.J.S.A. 17:9A-59.1 et seq.; Small Loan Law, N.J.S.A. 17:10-1 et seq.; Credit Union Act, N.J.S.A. 17:13-27 et seq.; Small Business Loan Act, N.J.S.A. 17:9A-59.25 et seq.; Home Repair Financing Act, N.J.S.A. 17:16C-62 et seq.
The Secondary Mortgage Loan Act, originally enacted in 1965, was replaced with the existing statute in 1970. It authorizes the State to regulate the secondary mortgage loan business to assure that the borrowing public is treated fairly. See New Jersey Real Estate Commission, Second Mortgage Investigative Report (1965); HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27, 38 (Law Div. 1968). No person is permitted to engage in the business without obtaining from the Commissioner of Banking a license, N.J.S.A. 17:11A-36, which can be acquired only if certain requirements *440 are satisfied. The annual interest rate may not exceed 18% per annum; interest may be computed only on unpaid principal; interest may not be paid or deducted in advance. N.J.S.A. 17:11A-44(a) (1). The licensee may not make a secondary mortgage loan until all other mortgagees have declined to make the loan. N.J.S.A. 17:11A-46(f). Further, a licensee may not "[m]ake a secondary mortgage loan which has been referred by a retail seller, who, in connection with such referral, has required the borrower to purchase personal property or services or has indicated that such purchase is necessary as a condition precedent for such loan." N.J.S.A. 17:11A-46(d).
A secondary mortgage loan is defined as a loan "which is secured in whole or in part by a lien upon any interest in real property created by a security agreement, including a mortgage * * *, which real property is subject to one or more prior mortgage liens and which is used as a dwelling * * *, [which] has accommodations for not more than 4 families * * *." N.J.S.A. 17:11A-35(a). Four express exceptions are (1) loans to be repaid in 90 days; (2) loans as security for a home repair contract (N.J.S.A. 17:16C-62); (3) loans bearing an interest rate not in excess of the usury rate; (4) or loans resulting from a sale of a dwelling in which the seller accepts a second mortgage as part of the purchase price. N.J.S.A. 17:11A-35(a).
Defendants have not demonstrated on their motion for summary judgment that either or both of the mortgages were secondary mortgages as defined in the act. The documents reveal that mortgages were placed on two parcels of real estate in connection with funds advanced on behalf of the defendants. However, there was no showing that the lands were subject to one or more prior mortgage liens and that there were dwellings on each property. The complaint made no such allegations and the defendants presented no affidavit or other proofs on their motion for summary judgment. *441 See R. 4:46-5(a).[2] Accordingly, there was no proof that the Secondary Mortgage Loan Act was applicable.
The Retail Installment Sales Act of 1960, N.J.S.A. 17:16C-60 et seq., governs sales of "chattels personal which are primarily for personal, family or household purposes[[3]] * * * having a cash price of $7500.00 or less * * *." N.J.S.A. 17:16C-1(a). A retail installment contract, defined as an agreement between a retail seller and a retail buyer to pay the purchase price in two or more installments over a period of time, includes a security agreement or other similar instrument by which the retail buyer agrees to pay the value of the goods. N.J.S.A. 17:16C-1(b). The act covers motor vehicle installment sellers. N.J.S.A. 17:16C-1(h). Certain provisions apply only to the sales of motor vehicles. N.J.S.A. 17:16C-32 and 40.1. For example, the time price differential may not exceed rates ranging from 7% to 13% per annum depending upon the age of the automobile. N.J.S.A. 17:16C-41. The act further provides that when motor vehicle installment contracts have been paid in full, "all security interest in the goods or in any collateral security" shall be released. N.J.S.A. 17:16C-52(b).
The instruments reveal that the defendants had entered into an agreement to purchase a motor vehicle for a sum to be paid over a 48-month period. The parties have conceded that all the requirements of the Retail Installment Sales Act have been met. The issue that remains is whether collateral in addition to the lien on the automobile may *442 include a realty mortgage which is not subject to the Secondary Mortgage Loan Act.
Though the Retail Installment Sales Act does not expressly prohibit such collateral, review of the statutory language demonstrates that the security contemplated by the act was the lien or interest in the goods sold. As originally enacted, the statute defined a retail installment contract as one "pursuant to which title to or lien upon the goods is retained or taken by the retail seller * * *." N.J.S.A. 17:16C-1(b).[4] Similarly, N.J.S.A. 17:16C-40.1 authorizes a sales finance agency to loan up to $5,000 to finance purchase of a car secured by a "purchase money security interest." The section goes on to provide:
For the purpose of this act, a purchase money security interest is hereby defined to be a security interest taken * * * pursuant to the provisions of chapter 9 of Title 12A of the New Jersey Statutes, in connection with and as security for an advance of money on behalf of a retail buyer of a motor vehicle to the motor vehicle dealer in payment of the unpaid balance of the cash purchase price. [N.J.S.A. 17:16C-40.1]
Secured transactions under Chapter 9 of Title 12A are limited to those in which the collateral is personal property or fixtures. N.J.S.A. 12A:9-102(1) (a).
Other pertinent provisions of the Retail Installment Sales Act refer only to the security interest in the goods which have been sold. When several purchases have been made, payments must be allocated in accordance with a stated formula before the seller may repossess any "goods." N.J.S.A. 17:16C-29. No similar provision restrains enforcement of real estate mortgages. So, too, the act prohibits a retail installment contract from containing a proviso waiving "any right of action" for any illegal act committed *443 "in the repossession of the goods." N.J.S.A. 17:16C-36. Again omitted is any reference to mortgages. The Legislature, had it contemplated that real estate mortgages might be given as additional collateral security for retail installment sales, surely would have extended these statutory safeguards to include real property mortgages.
Other sections of the act confirm this reading. The retail seller may cause the retail buyer to insure the "goods," N.J.S.A. 17:16C-30, but not a dwelling house on the mortgaged property. The retail installment contract must specify the amount of "official fees," N.J.S.A. 17:16C-27, which are defined as those required to be paid to a public officer to perfect "the interest or lien, on the goods," N.J.S.A. 17:16C-1(k), with no mention of the amount for recording a mortgage. No retail seller may collect any costs or charges other than those permitted in the act "except * * * attorney fees and the expenses of retaking and storing repossessed goods which are authorized by law." N.J.S.A. 17:16C-50. No provision has been made for charges incurred in foreclosures.
Plaintiff directs attention to N.J.S.A. 17:16C-52, which provides that when all installments have been paid, the holder of the debt shall return to the buyer (a) the instruments evidencing the indebtedness or constituting security under a retail installment contract, which were signed by the retail buyer or his sureties or guarantors; (b) a release of all security interest in the goods or in any "collateral security" to the obligation of the retail buyer under such contract; and (c) good and sufficient assignments and certificates of title. The plaintiff argues that the words "collateral security" contemplate real estate mortgages. This argument is not persuasive. We believe in view of the total framework of the statute that the reference to "collateral security" does not refer to real estate mortgages, but more probably to the collateral security evidenced by the obligations of a surety or guarantor.
*444 There has been brought to our attention an informal Attorney General's opinion which concludes that the act does not preclude retail sellers or sales finance companies from taking a real property mortgage as additional security.[5] The Attorney General now disavows that opinion as representing "nothing more than an internal legal memorandum which reaches what we believe is an erroneous conclusion." As stated in the Attorney General's brief,
[i]t is therefore plain that in fashioning the Retail Installment Sales Act in general, and the protections provided therein for consumers in particular, the focus of the Legislature was upon the typical retail installment sales transaction in which the seller and/or finance company permits the purchase of goods over a period of time and in return is authorized to recoup a finance charge or time price differential up to a certain limit and further authorized, as security, to retain an interest in the goods in the form of a security interest or chattel mortgage. Extraction from the consumer of a real property mortgage as security simply is not authorized within the context of that particular financing scheme.
We agree and hold that a real property mortgage may not be taken as additional collateral security with respect to the Retail Installment Sales Act and that the retail installment seller here could not accept a real estate mortgage as additional security under the Retail Installment Sales Act.[6] Accordingly, the real estate mortgages given by the defendants are hereby declared null and void and are to be discharged of record.
*445 The judgment is reversed and the cause remanded to the trial court for such further proceedings as may be appropriate in conformity with this opinion.
For reversal and remandment  Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER  7.
For affirmance  None.
NOTES
[1] National consumer credit legislation treats all forms of consumer financing uniformly and essentially eliminates any distinction predicated on whether the transaction is designated a sale or a loan. See Model Consumer Credit Act (National Consumer Law Center, 1973).
[2] The rule provides that when a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials of his pleadings, unless it appears that the pertinent facts cannot be presented by affidavit, depositions or other discovery.
[3] The limitation that the goods be primarily for personal, family or household purposes was added by L. 1972, c. 14, § 1, effective April 19, 1972, two months after this transaction was made.
[4] The quoted language was subsequently eliminated apparently only to conform with the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq.
[5] The Chief of the Consumer Credit Division of the Bureau of Banking had previously adopted the same position, but cautioned that his statement was "not to be considered as a legal opinion, which we have no authority to render." Though interpretation of a statute by an agency engaged in administration of that act may shed interpretative light, it is not conclusive and is not determinative here.
[6] To the extent that Girard Acceptance Corp. v. Boyle, 109 N.J. Super. 317 (App. Div. 1970), and Public Acceptance Corp. v. Taylor, 127 N.J. Super. 323 (App. Div. 1974), conflict with this opinion, they are overruled.