190 N.J. Super. 615 (1983)
464 A.2d 1203
WILLIAM WESTERVELT AND JANET WESTERVELT, HUSBAND AND WIFE, PLAINTIFFS,
v.
GATEWAY FINANCIAL SERVICE, SECURITY PACIFIC FINANCE CORP. AND THE CENTRAL NATIONAL LIFE INSURANCE COMPANY OF OMAHA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided June 27, 1983.
*617 Louis Cohen for plaintiffs (Brigiani, Gelzer, Cohen & Schneider, attorneys).
*618 Dennis M. Reznick for defendant Security Pacific Finance Corp. (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
Richard T. Philips for defendant The Central National Life Insurance Company of Omaha (DeCotiis & Philips, attorneys).
COHEN, J.S.C.
This case presents questions concerning the rights of an innocent purchaser for value of a note and mortgage governed by the provisions of the Secondary Mortgage Loan Act, N.J.S.A. 17:11A-34 et seq. For all of the reasons below, I hold that a note and mortgage that were not executed in full compliance with the Act are void and unenforceable in the hands of a purchaser for value, however innocent it may be and however well it may qualify as a holder in due course. N.J.S.A. 12A:3-302. I also hold, however, that secondary mortgage transactions governed by N.J.S.A. 17:11A-34 et seq. are not also subject to the provisions of the Consumer Fraud Act. N.J.S.A. 56:8-1 et seq.
On the cross-motions for summary judgment now before me, the undisputed material facts are these: Gateway Financial Service, a corporation licensed to deal in secondary mortgages, made a loan to plaintiffs that was secured by a mortgage on their home. The transaction was governed by the Secondary Mortgage Loan Act. Gateway sold the note and mortgage to Security Pacific Finance Corp., also a corporation licensed to deal in secondary mortgages. At the closing of the loan, a $3000 deduction was made for credit life insurance. Gateway's principal, who was also an agent of Central National Life Insurance Company of Omaha, never submitted the premium to Central National and no policy of insurance was ever written. In addition, plaintiffs assert that they were forced to buy the insurance. They also say that the $800 attorney's fee charged at the closing was unlawfully high. In these ways, argue plaintiffs, the loan transaction violated various provisions of the Act.
*619 Plaintiffs' suit against Gateway and Security Pacific seeks a judgment declaring that their note and mortgage are void and unenforceable by defendants. They also seek return from Security Pacific of all periodic payments plaintiffs made to it since the filing of the complaint, and a judgment against Gateway and Central National for the amount of the deducted insurance premium. Gateway has never answered or otherwise participated in the suit. Security Pacific crossclaimed against Gateway and Central National and counterclaimed for rescission of the entire loan transaction. On the motions of plaintiffs and Security Pacific for summary judgment, the focal disagreement relates to Security Pacific's status and rights. There may be factual disputes as to the extent of Security Pacific's participation in the initiation of the loan and the extent to which Gateway acted in the transaction as the agent of Security Pacific. See Unico v. Owen, 50 N.J. 101 (1967). I find it unnecessary, however, to resolve those disputes as they are not material. It does not matter whether Security Pacific was involved in creating the problems plaintiffs find in the transaction, because its rights do not vary depending on whether it is a holder in due course.
The Secondary Mortgage Loan Act was adopted in 1970 in response to abuses in the secondary mortgage market. It established a licensing system for dealers, limits on interest and other expenses chargeable to borrowers, and fair loan closing procedures, and went on to prohibit certain improper practices. N.J.S.A. 17:11A-37, 44, 45, 46. The Act bars charging of broker's or finder's fees or points or premiums. N.J.S.A. 17:11A-48. It prohibits requiring credit life or accident and health insurance in connection with the loan. N.J.S.A. 17:11A-49. It bars prepayment penalties, N.J.S.A. 17:11A-50, waivers of statutory protections, N.J.S.A. 17:11A-52(a) assignments of wages, N.J.S.A. 17:11A-52(c), and waivers of rights against the lender or subsequent holder for collection irregularities. N.J.S.A. 17:11A-52(f). The Act closely regulates note provisions for collection attorney's fees. N.J.S.A. 17:11A-53. It gives the Commissioner of *620 Banking the power to make rules and regulations and to conduct investigations and hearings, N.J.S.A. 17:11A-54, and to suspend and revoke licenses. N.J.S.A. 17:11A-56. The Act also imposes penalties for violations of its terms. N.J.S.A. 17:11A-59. Most importantly for this case, N.J.S.A. 17:11A-58 provides:
Any obligation on the part of the borrower arising out of a secondary mortgage loan shall be void and unenforceable unless such secondary mortgage was executed in full compliance with the provisions of this act.
See Stubbs v. Security Consumer Discount Co., 85 N.J. 353 (1981).
Assuming that Security Pacific is a holder in due course of plaintiffs' note and mortgage, what are its rights if, because of noncompliance with the Act's requirements, the note and mortgage are "void and unenforceable"? The answer lies in the policy of the Act and in the words of the Uniform Commercial Code as adopted in New Jersey. It is plain that the policy of the Act is to give generous protection to borrowers in regulated transactions. See HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27 (Law Div. 1968). The Act recognizes that second mortgagors are frequently persons seeking loans of last resort, that they are usually in no position to bargain over the terms of the loan or to have any real idea what they might bargain about. The Act recognizes that lenders of last resort are frequently persons whose methods ought to attract careful scrutiny and that their customers are peculiarly unfit to perform that function. Thus, the Act not only creates monetary penalties for persons violating its terms. It not only authorizes the Commissioner of Banking to suspend or revoke the license of violators. The Act goes further and makes noncomplying loans void and unenforceable.
What does "void and unenforceable" mean to a holder in due course? N.J.S.A. 12A:3-305(2) says that a holder in due course takes the instrument free of all defenses of any party with whom he has not dealt except
(a) ...

*621 (b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity;
(c) ...
(d) ...
(e) ...
The Uniform Commercial Code was adopted in New Jersey in 1961. Only nine years later, the Secondary Mortgage Loan Act was adopted. It was intended to regulate specifically the conduct of a certain kind of loans some aspects of which were already the subject of general Code provisions. Surely, the legislature was conscious in 1970 of the need to harmonize the terms of the new Act with the already existing Code. Therefore, when the legislature decided that a noncomplying loan should be void and unenforceable, it must have had its eye on the Code provision that subjects even holders in due course to the defenses of "such... illegality of the transaction, as renders the obligation ... a nullity". It is inconceivable that the legislature thought there was some difference between "void and unenforceable" in the Act and "a nullity" in the Code. The words are interchangeable. Surely, the legislature meant to say that a noncomplying secondary mortgage would be a nullity as that word is used in N.J.S.A. 12A:3-305(2).
This result is wholly in keeping with the policy of the Act. If it seems a harsh result, it was open to the legislature to decide that strong measures were needed to deal with a harsh business. Licensed dealers in secondary mortgages were intended by the Act to deal at their peril. Whether as original lenders or as purchasers of loan instruments, the legislature demanded of them the utmost scrupulous regard for borrowers' rights. Only by making the consequences of noncompliance so grave, the legislature could have felt, could it motivate lenders and buyers of loan paper to be constantly on their guard against abuses.
The legislature apparently felt the same way about the need to motivate home repair contractors and those who finance home repair contracts. In N.J.S.A. 17:16C-64.2, it provided that promissory notes given in payment of home repair contracts *622 were not to be negotiable instruments. Buyers of the instruments were therefore subject to all defenses available against the contractor. The problem faced by the legislature was the same as it is here, namely, the need to protect the public when dealing with an industry in which abuse and overreaching were demonstrated dangers. The solution was the same, too. Fair dealing was encouraged by preventing the loss of rights in the shuffle of commercial paper.
This result is also wholly in keeping with existing authority. The fact that a negotiable instrument is rooted in an illegal transaction is normally no defense to enforcement by a holder in due course. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952); New Jersey Mortg. & Inv. Corp. v. Berenyi, 140 N.J. Super. 406 (App.Div. 1976); Factors and Note Buyers, Inc. v. Green Lane, Inc., 102 N.J. Super. 43 (Law Div. 1968). However, an instrument rooted in an illegal transaction may be declared by statute to be therefore void and unenforceable. Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E & A 1946); 2 Bender, U.C.C. Service, Commercial Paper, Sec. 12.11. New Jersey Study Comment 4 to N.J.S.A. 12A:3-305 recognizes the traditional rule and indicates that the Code follows it:
In New Jersey, a holder in due course takes free and clear of the defense of illegality, unless the statute which declares the act illegal also indicates that payment thereunder is void. [citation omitted] Thus in Fisher v. Brehm, 100 N.J.L. 341, 126 A. 444 (1924) and Gross v. Jacobson, 7 N.J. Misc. 851, 147 A. 380 (1929), notes were given in payment of a gambling debt were not enforceable by a holder in due course, because N.J.S.A. 2A:40-3 specifically states that such promises are void and of no effect.
In New Jersey Mortg. & Inv. Corp. v. Berenyi, supra, the disputed promissory note arose out of a transaction in which the original payee violated an injunction. The holder, who had no notice of the injunction and the impropriety of the payee's actions, was permitted to enforce the borrower's payment obligation. The court said, 140 N.J. Super. at 409-10,
There being no statute ordaining that a note obtained in violation of an injunction is void and unenforceable, the illegality involved is not a `real' defense; the note is enforceable in the hands of a holder in due course who had no knowledge or notice of the injunction.
*623 Here, there is presented exactly what the Berenyi court could not find, i.e., a statute ordaining that a loan that violates its terms is "void and unenforceable". And so it is, even in the hands of an innocent purchaser for value.
Was plaintiffs' mortgage loan executed in full compliance with the provisions of the Secondary Mortgage Loan Act? The defects alleged by plaintiffs were (1) that the $800 legal fee charged in connection with closing their $28,829 mortgage was unreasonably high and thus violated N.J.S.A. 17:11A-46(g), and (2) that the coercion, by Gateway's principal, of plaintiffs to buy credit life insurance and the deduction of a premium of over $3000 from the loan proceeds violated N.J.S.A. 17:11A-49. The policy of insurance was never issued. Plaintiffs also charge that their interest is calculated on $28,829 even though they received some $3000 less. That makes their actual interest 24.4% rather than the 21% they contracted to pay. Since it was Gateway's principal who initiated the loan transaction and deducted the money for the insurance premium and apparently pocketed it, plaintiffs argue, he knew he was charging interest on funds not received by plaintiffs or devoted to their use.
There are material facts in dispute on the reasonableness of the attorney's fees and the manner in which the insurance portion of the loan transaction took place. They are sufficient to bar disposition by summary judgment. Plaintiffs' motion is to that extent denied. Disposition of Security Pacific's cross-claims against Gateway and Central National must await hearing and determination of those disputed facts.
On Security Pacific's counterclaim against plaintiffs for a judgment rescinding the loan transaction, summary judgment is granted to plaintiffs. The gist of Security Pacific's counterclaim is that it purchased the note and mortgage on the strength of documents signed by plaintiffs at or before the closing of the loan. One of the documents was a Federal Disclosure Statement, in which plaintiffs represented that they purchased life insurance voluntarily and not under any compulsion. If that *624 representation was false, Security Pacific says, and plaintiffs seek to void the transaction on that ground, then Security Pacific is entitled to a judgment of rescission on account of the untrue representation on which it relied.
If Security Pacific's position were valid, the central purposes of the statute could be defeated by the simple expedient of having borrowers sign papers at the closing acknowledging the absence of statutory violations. Assignees would then buy loans in reliance and that would be the end of any objections. But if the statute exists to protect the ignorant, the choiceless and the often overreached, its protections should not be dissipated in such a casual way. Its strong policies will not permit estoppel or waiver to bar its application in such circumstances and rescission, which presumably includes repayment of the borrowed principal, can not be granted to assignees of noncomplying loans. See HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27 (Law Div. 1968). Judgment will be entered dismissing the counterclaim.
The final matter before me is Security Pacific's motion for judgment dismissing the claim that its conduct violated the Consumer Fraud Act. N.J.S.A. 56:8-1 et seq. The Act declares to be an unlawful practice the
employment by any person of any unconscionable commercial practice, deception, fraud * * * in connection with the sale or advertisement of any merchandise or real estate, * * *.
N.J.S.A. 56:8-2. The Act defines "sale" as follows:
The term `sale' shall include any sale, rental or distribution, offer for sale, rental or distribution, or attempt directly or indirectly to sell, rent or distribute.
N.J.S.A. 56:8-1(e).
Plaintiffs contend that a second mortgage transaction is a sale of an interest in real estate. They point to the traditional view of a mortgage as a conveyance of land as security for a debt with a defeasance and equity of redemption. See Wilbur v. Jones, 80 N.J. Eq. 520 (E & A 1912); Blue v. Everett, 56 N.J. Eq. 455 (Chan. 1898). Plaintiffs make an interesting antiquarian argument. It is a different matter whether the legislature *625 included mortgages in the Consumer Fraud Act. There are three reasons to believe it did not. The first is that although a second mortgage is a conveyance of sorts, it is more significantly a security transaction that was made the subject of a complete regulatory statute that addressed itself directly and thoroughly to its particular problems. Second, the remedies in the two statutes are in conflict. Each imposes penalties and measures them differently. In addition, while the Secondary Mortgage Loan Act voids the obligation to repay a noncomplying loan, the Consumer Fraud Act imposes treble damages and attorney's fees. N.J.S.A. 56:8-19. May the wronged borrower pick and choose among these remedies? Third, each statute authorizes the adoption of administrative regulations, one by the Commissioner of Banking, the other by the Attorney General. On top of that, the Consumer Fraud Act envisions enforcement by state and county offices of consumer affairs. N.J.S.A. 56:8-14.1.
Perhaps each of the mentioned incongruities could somehow be tortuously reconciled. The question remains why the legislature would intentionally create such obvious areas of conflict. The New Jersey Supreme Court faced a very similar problem in Daaleman v. Elizabethtown Gas Company, 77 N.J. 267 (1978). The question there was whether utility customers had a cause of action under the Consumer Fraud Act for alleged fraudulent manipulation by the utility of its tariff. The element was present there of an administrative body with jurisdiction over the dispute, but the Court's opinion also dwelled on the conflicts that would be produced if the utility were subjected to two areas of inconsistent regulation. There, and here, there is no sound reason to suppose the legislature meant to subject the same subject matter to two distinct and conflicting regulatory schemes. That is especially so where one of the statutes deals exclusively with the subject matter and the other appears not to deal with it at all. The claim of plaintiffs under the Consumer Fraud Act must be dismissed.
Plaintiffs will submit an order reflecting all of these rulings.