203 N.J. Super. 249 (1985)
496 A.2d 725
MANUEL SELENGUT, PLAINTIFF-APPELLANT,
v.
JEROME FERRARA AND ELIZABETH D. FERRARA, HIS WIFE, DEFENDANTS-RESPONDENTS, AND MILDRED RUBIN, THE MADDEN AGENCY OF MORRIS COUNTY, INC., A NEW JERSEY CORPORATION AND J. TEDESCO PLUMBING AND HEATING, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1985.
Decided July 19, 1985.
*251 Martin Newmark argued the cause for appellant (Broderick, Newmark, Grather & Aspero, attorneys; Martin Newmark, on the brief).
Dennis M. Mahoney argued the cause for respondents (Mahoney, Mahoney & Cannon, attorneys; Dennis M. Mahoney, on the brief).
Dennis R. Casale argued the cause for amici curiae New Jersey Bankers Association and New Jersey Council of Savings Institutions (Jamieson, McCardell, Moore, Peskin & Spicer, attorneys; Dennis R. Casale, on the brief).
*252 Before KING, DEIGHAN and BILDER, JJ.
The opinion of the court was delivered by DEIGHAN, J.A.D.
On this appeal we are required to determine whether a bona fide business loan made by a banking institution to a corporation, on a personal guarantee and a secured mortgage on the guarantor's residence, is subject to the provisions and limitations of the Secondary Mortgage Loan Act. N.J.S.A. 17:11A-34 et seq. Plaintiff, Manuel Selengut appeals from a dismissal of the complaint to foreclose his second mortgage given by defendants Jerome Ferrara and Elizabeth D. Ferrara, his wife on their home and an order to cancel the mortgage which was held to be subject to the Act and found to have been violated by plaintiff and his assignor bank.
On September 25, 1975 Peoples National Bank of Denville (Peoples National) loaned $75,075 to S.H.S. Systems, Inc. (S.H.S.). S.H.S. was owned by four persons, Irving Weber, Barry Gardner, Theodore Edgar and Jerome Ferrara, each of whom held 25% of the stock in the corporation. S.H.S. operated a bar-restaurant and the purpose of the loan was for business reasons. S.H.S. needed money to obtain working capital to finance construction of a new room, furniture, fixture, electrical work, plumbing, and other renovations. While S.H.S. was starting a new venture it was not a new corporation nor was it a "shell" corporation. Rather, it was an existing and operating corporation that owned real and personal property, paid salaries and was capitalized by borrowed and invested funds.
Because S.H.S. did not have sufficient collateral to secure the $75,075 loan, Peoples National required the four stockholders, as further collateral for the loan, to execute personal guarantees of the corporation's indebtedness and to execute mortgages to the bank on their private residences as a condition for obtaining the loan.
*253 Since the narrow issue presented above does not involve the full factual spectrum presented in the record, we shall consider only the factual determinations and conclusions of the trial judge concerning the foreclosure of the mortgage on defendant's residence and the relationship of that mortgage to the initial loan to S.H.S. The original corporate obligation and mortgage together with all guarantees of the four individual shareholders and mortgages on their respective homes were transferred by Peoples National to plaintiff on August 9, 1978.
The trial judge found that the $75,075 promissory note to Peoples National Bank was signed by the corporation and guaranteed by the individuals and that the note constituted a loan to the corporation. He then concluded:
So, there is that obvious and straightforward sense in which the 1975 arrangement was a loan to the corporation. And if that's all that was involved in the loan, clearly, the Secondary Mortgage Loan Act would not apply [by virtue of N.J.S.A. 17:11A-35(a), which excepts from the act's coverage "a loan made to ... a corporation"].
However, the bank did not simply deal with the corporation in setting up the [$75,075] loan. The bank did two things that went well beyond just dealing with the corporation.
In the first place, each of the four shareholders of the corporation was required to individually guarantee the entire indebtedness of the corporation to the bank.
In the second place, each of the individual shareholders was required to mortgage his own personal residence as security for his guarantee of the bank loan.
Now, once the bank got into the business of requiring personal guarantees secured by second mortgages on the personal residences of the four individual shareholders, it seems to me that it became involved in a secondary mortgage loan within the meaning of the act.
Now, we have to keep in mind what the purposes of the Secondary Mortgage Loan Act were. The purposes were to protect individuals who had a need of borrowing money and who had to give second mortgages on their residences as security for that borrowing and as an inducement for that borrowing.
* * * * * * * *
Now, it seems to me that if someone is going to exact as security for a loan a second mortgage on the home of an individual person, that there arises the kind of vulnerability and the kind of susceptibility to private decisions and to overreaching that the legislature had in mind when it enacted the Secondary Mortgage Loan Act.

*254 And it, therefore, seems to me that if the Act is to be given its proper effect, and if the intent of the legislature to protect the citizens and homeowners of this state with respect to loans imposing secondary mortgages on their homes is to be given effect, that we have to treat the original [1975] Peoples National Bank loan as being a loan covered by the Act.
The trial judge, sua sponte, held that the loan made by Peoples National to a bona fide corporation for business purposes with guarantees by individual shareholders and secured by second mortgages on the personal residences constituted a "secondary mortgage loan" subject to the provisions of the Secondary Mortgage Loan Act, N.J.S.A. 17:11A-34 et seq. He therefore voided the underlying obligation and discharged the mortgage securing the loan. See N.J.S.A. 17:11A-58; Stubbs v. Security Consumer Discount Co., 85 N.J. 353 (1981).
We reverse and hold that the original loan made by Peoples National to S.H.S. was not subject to the provisions of the Secondary Mortgage Loan Act, N.J.S.A. 17:11A-34 et seq. First, the Act is not applicable to State and National Banks and second, loans to corporations are exempt from the provisions of the Act.
As to the initial transaction with Peoples Bank, N.J.S.A. 17:11A-61, of the Act provides that
Nothing in this act shall be construed as expanding or restricting the powers otherwise conferred by law upon financial institutions, such as State and National banks, State and Federal savings and loan associations, savings banks and insurance companies, to engage in the secondary mortgage business as defined in section 3 [N.J.S.A. 17:11A-36], and no such financial institution, in exercising any power otherwise conferred upon it, shall be subject to any provision of this act. [Emphasis supplied].
The Act specifically precludes a construction which would expand or restrict the powers otherwise conferred by law upon financial institutions, such as federal and state banks and associations, to engage in the secondary mortgage business under the act. City Consumer Services v. Dept. of Banking, 134 N.J. Super. 588, 596 (App.Div. 1975), certif. den. 69 N.J. 73 (1975). It provides that "no [financial] institution, in exercising any power otherwise conferred on it, shall be subject to any provision of the act, N.J.S.A. 17:11A-61." Ibid. This is because *255 "financial institutions, such as banks and associations, were not the prime target of the act." Id. at 597. The act's main purpose was to "correct abuses in the second mortgage loan industry, rather than to regulate such institutions." Ibid. Thus, while "the act empowers the Commissioner [of Banking] to curb by regulation potential abuses in the second mortgage loan business and to exercise strict control thereof," financial institutions (such as banks and savings and loan associations) are exempt from such control. Ibid. See also Approved Finance Co. v. Schaub, 137 N.J. Super. 325 (1975), mod. on other grounds 73 N.J. 193 (1977), where this court held that the "purpose of the Secondary Mortgage Loan Act (1970), N.J.S.A. 17:11A-34 et seq., was to provide strong remedial measures for the secondary mortgage loan business," id. at 331, and, therefore financial institutions such as state or national banks "remain able to transact second mortgages by dealing directly with the borrower. N.J.S.A. 17:11A-61." Id. at 334.
Second, the Secondary Mortgage Loan Act was enacted to protect consumers and the public, not corporations. N.J.S.A. 17:11A-35(a) defines a "secondary mortgage loan" covered by the act to mean "a loan made to an individual, association, joint venture, partnership ... or any other group of individuals however organized, except a corporation, which is secured in whole or in part by a lien upon any interest in real property ... created by a security agreement, including a mortgage ..., which real property is subject to one or more prior mortgage liens...." (emphasis supplied).
The Secondary Mortgage Loan Act was enacted in 1970 as "part of the package of laws designed to protect consumers from overextending their own resources and also to promote the availability of financing to purchase various goods and services." Girard Acceptance Corporation v. Wallace, 76 N.J. 434, 439 (1978). Specifically, the Secondary Mortgage Loan Act was enacted to regulate the secondary mortgage loan business to assure that the "borrowing public" was treated *256 fairly. Ibid. In Stubbs v. Security Consumer Discount Company, 171 N.J. Super. 67 (App.Div. 1978), rev'd on other grounds 85 N.J. 353 (1981), this court noted that the primary motivation behind the act was to protect "individuals," who own real property, and to assure them of fair dealing. 171 N.J. Super. at 74. Finally, in Westervelt v. Gateway Financial Service, 190 N.J. Super. 615 (Ch.Div. 1983), Judge Cohen noted that the act "recognizes that second mortgagors are frequently persons seeking loans of last resort" and that "they are usually in no position to bargain over the terms of the loan or to have any real idea what they might bargain about." Id. at 620. Thus, in passing the act, the Legislature sought to "protect the public when dealing with an industry in which abuse and overreaching were demonstrated dangers." Id. at 622.
At the same time, while loans to corporations are sheltered from the act's coverage by the exception in N.J.S.A. 17:11A-35(a), lenders cannot engage in a "deliberate scheme designed to circumvent full compliance with the Secondary Mortgage Loan Act" by, for example, designing individual loans to look like loans to corporations. First Mutual Corp. v. Grammercy & Maine, Inc., 176 N.J. Super. 428, 439 (Law Div. 1980). Corporations which are nominal borrowers and serving merely as "cloaks for individual loans" must be disregarded, and such loans are covered by the Act. In view of the foregoing legal principles it is necessary to review the factual findings of the trial judge.
On October 28, 1983, the trial judge in his oral decision made the following findings of fact: In September 1975 S.H.S. was a corporation that operated a restaurant and bar; was a "legitimate preexisting corporation" and "not a corporation just set up as a cover for getting around usury provisions or for getting around the requirements of the Secondary [Mortgage] Loan Act"; had a "significant economic life of its own, predating the loan ... [from] the bank"; owned "property ... that was valuable and that was separate and apart, [and] very *257 distinct from the property of its four individual shareholders", and "really did want the ... [$75,075] for corporate purposes" and "needed the $75,000 for business purposes." He found that Peoples National was "not willing to lend the $75,000 simply on the basis of the corporation's giving a promissory note, even though the promissory note was to be secured by a mortgage on the real estate owned by the corporation," because "that was not sufficient for the bank." Therefore, Peoples National "also required Mr. Ferrara, along with [the] three other men who also each owned 25 of the shares and stock of the corporation ... to sign personal guarantee of the indebtedness of the corporation and also each of those men was required by the bank to give a second mortgage on the personal residence of the individual man who was a shareholder in the corporation." Finally, the trial judge found that the $75,075 promissory note to Peoples Bank was signed by the corporation and that the note constituted a loan to the corporation.
Based on these findings we hold that it was error to apply the Secondary Mortgage Loan Act to the original loan by Peoples National to S.H.S. As a banking institution Peoples National is exempt from the restrictions of the Act. Additionally, it is undisputed that the loan proceeds went to S.H.S. solely for corporate purposes and that S.H.S. was not serving as a sham to cloak individual loans to any of the corporation's stockholders. The September 1975 loan to S.H.S. was also exempt from the Act as one exclusively involving a corporation as borrower.
Nor is this result changed by the requirement of Peoples National that each of S.H.S.'s four stockholders individually guarantee the entire indebtedness of the corporation to the bank and mortgage his own personal residence as security for his guarantee of the bank loan before the bank would loan $75,075 to S.H.S. The trial judge noted the purpose of the act was only to protect "individuals who had a need of borrowing money" and who had to give secondary mortgages on their real property "as security for that borrowing and as an inducement for that borrowing." That is, the act covers "individual loans," *258 not bona fide loans to corporations. First Mutual Corp., supra, 176 N.J. Super. at 439.
In the joint appendix filed by amici curiae New Jersey Bankers Association and New Jersey Council of Savings Institutions, the affidavit of Robert C. Forrey, President of the New Jersey Bankers Association, states that:
Based upon my conversations with officers of several [of the 134] New Jersey Bankers Association member banks, I believe that the Court should be aware that banks quite commonly require personal guarantees and "side collateral" agreements in loan transactions involving small businesses, much like the agreements entered into between Peoples National Bank of North Jersey, Denville and Mr. Ferrara in the present case. Such guarantees and collateral serve to provide additional security for loans which might not otherwise be made available [to small businesses] or for which a higher interest rate might otherwise be charged.
We further hold that the act does not invalidate a bona fide loan by a bank to a corporation merely because the bank requires, as additional security for a corporate loan, personal guarantees from and mortgages on the residences of the corporations stockholders.
A guarantee by individuals of a loan under the Secondary Mortgage Loan Act to a corporation is analogous to the guarantee of a loan by individuals to a corporation which, as to individuals, would be usurious.[1]N.J.S.A. 31:1-6 provides that "[N]o corporation shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation." When loans are actually made to a corporation, usury is not a defense by the individual endorsers or guarantors of the corporate obligation. Gelber v. Kugel's Tavern, Inc., 10 N.J. 191, 196 (1952), citing Silberman v. Isaac Cades, Inc., 107 N.J. Eq. 574 (E. & A. 1931). See also Lembeck v. Jarvis Cold Storage Co., 70 N.J. Eq. 757 (E. & A. 1905); Lane v. Watson, 51 N.J.L. 186, *259 188 (Sup.Ct. 1889), aff'd 52 N.J.L. 550 (E. & A. 1890) (applying New York Law); Feller v. Architects Display Buildings, Inc. 54 N.J. Super. 205, 212 (App.Div. 1959); Commercial Funding v. Melroy, 106 N.J. Eq. 11 (Ch. 1938); General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305, 310-311 (Ch. 1932) (individuals who mortgage property as security for corporate debt does not constitute transactions usurious); Richmond Bldg. & Loan Asso. v. Aurora Health Farm, 9 N.J. Misc. 1015, 156 A. 450 (Ch. 1931) (individual on bond secured by corporate mortgage may not plea usury); Armin Corp. v. Kullman, 127 N.J. Super. 600, 603 (Law Div. 1974); A.J. Armstrong, Inc. v. Janburt Embroidery Corp., 97 N.J. Super. 246, 262 (Law Div. 1967); Ferdon v. Zarriello Bros., Inc., 87 N.J. Super. 124, 129 (Law Div. 1965); Corradini v. V & M Holding Corp., 34 N.J. Super. 427, 433 (Ch.Div. 1955).
Nor is the above exception to the defense of usury peculiar to New Jersey. It is generally recognized that a statute withdrawing the defense of usury from a corporation applies also to individual guarantors, sureties, and endorsers on the corporate obligations, so that they, as well as the corporation, are precluded from interposing usury as a defense. See Annotation, "Statute denying defense of usury to corporation," 63 A.L.R.2d 924, 950 (1959) and cases cited therein.
Since the usury statute, which prohibits corporations from pleading usury as a defense, also prohibits guarantors from pleading usury as a defense, by the same token, the Secondary Mortgage Loan Act, which exempts corporations from its restrictions and prohibitions, likewise exempts guarantors from its protection and benefits.
Within two years after the initial loan was made, S.H.S. defaulted and Peoples National called the loan, instituted a foreclosure action against the personal residence of one of the shareholders, Ted Edgar and was about to institute foreclosure proceedings against defendants herein, Jerome Ferrara and Elizabeth Ferrara, his wife.
*260 At about the same time another shareholder, Barry Gardner was attempting to sell his home which was also encumbered by the second mortgage held by Peoples National. In order to convey a clear title Gardner required a release from Peoples National mortgage on his property. He contacted plaintiff and offered him $10,000 as well as Gardner's 25% interest in S.H.S. to take over the mortgage held by Peoples National and release Gardner's property from the lien of that mortgage. Plaintiff agreed and upon payment of the balance then due, $72,969.61, Peoples National assigned to plaintiff the note of the corporation, the guarantees of the four individual shareholders as well as four mortgages held by Peoples National as collateral security. The loan documents, including the second mortgages provided, among other things, that any future advances or indebtedness would likewise be secured by the guarantees and mortgages. Plaintiff then cancelled the mortgage held on the Gardner residence, however, he did not release Gardner from his personal obligation as a guarantor of the loan.
Plaintiff then contacted the other three stockholders to advise them that he had taken over the bank's loan and proposed an arrangement with the remaining three stockholders. He proposed that the loan would be reinstated and a schedule of monthly payments provided to enable the indebtedness to be satisfied in lieu of the pending foreclosure against Edgar and the impending foreclosures against Ferrara and Weber. He proposed to the three shareholders an arrangement whereby each of the shareholders, who were joint and severally responsible for the full amount of the loan, would become responsible for only one-third, approximately $24,500, of the total indebtedness which would be payable to plaintiff over a period of time and the interest rate was raised from 12% to 15%. Ultimately, the three stockholders accepted this arrangement.
The trial judge found that additional loans were made to defendant from time to time which were added to and became a part of the security of the original second mortgage given by *261 the Ferraras to Peoples National. He found that the major security was the second mortgage on the Ferraras' house which came within the "breach of the Secondary Mortgage Loan Act" and that plaintiff charged the Ferraras certain bonuses, premiums and compound interest. Because of substantial violations of the Act, he held that the indebtedness was void and discharged the second mortgage as invalid. The trial judge therefore made no determination as to the balance, if any, due to plaintiff on his mortgage.
Plaintiff contends that the additional monies advanced by him after acquiring Peoples National loan in 1978 were advanced to S.H.S. for purposes which were personally guaranteed by defendant which guarantee continued. He argues that the post-August 1978 loans were loans made to a viable corporation for valid corporate purposes which were also excepted from the Act by N.J.S.A. 17:11A-35(a).
Indeed, the record reflects that the plaintiff is correct in his assertion that the loans were made to the corporation and were used for corporate purposes. On direct examination, Ferrara admitted that plaintiff's post-August 1978 loans had been made to S.H.S. and that the proceeds of these loans were used solely for corporate purposes. In addition, Ferrara claimed that he had never received any money from plaintiff.
On cross-examination, Ferrara again conceded that he signed the various post-August 1978 loans documents as president of S.H.S.; that the loan monies had been borrowed for corporate purposes; that S.H.S. was not a shell corporation, but a legitimate corporation, and that, he, himself, had not been "pocketing" any of the loan proceeds. Ferrara was quite clear in his testimony that their post-August 1978 loans represented legitimate corporate borrowings for legitimate corporate purposes; that these loans were primarily sought to satisfy S.H.S.'s working capital needs, and that he, himself, had "borrowed no working capital" from plaintiff.
*262 In his counter-statement of facts before us, Ferrara concedes that the post-August 1978 loans by plaintiff were actually paid to the corporation and were used for business purposes. However, in order to bolster the trial judge's determination that the loan violated the Secondary Mortgage Loan Act, he now conjures up a set of facts contrary to the record. He tries to demonstrate that the corporation was nothing more than a facade or shell at the time of the original loan and that the loan was not made to a bona fide corporation but to Ferrara individually. Defendant asserts, without any citation to the evidentiary record, that the "corporate integrity of S.H.S., Inc., at best paper thin at the time of the original [September 1975] Peoples loan, was nonexistent at the time ... [plaintiff] was loaning money to defendant." He contends, again without any citation to the evidentiary record, that, in making these post-August 1978 loans, plaintiff was "dealing solely with Ferrara" and that it was "Ferrara that ... [plaintiff] was loaning the money to." Defendant argues that plaintiff "knew that the real debtor [for these loans] was Ferrara" and insists that "[a]nything else was purely illusionary." Consequently, he maintains that the trial judge was correct in looking beyond the corporate form of these loans to the substance of plaintiff's loans to Ferrara and in holding that these post-August 1978 transactions between plaintiff and Ferrara were also subject to the act. Defendant seems to forget that three other shareholders also guaranteed the corporate loan and mortgaged their homes for the corporation and that advances were secured under the original documents.
These factual assertions by the Ferraras' are rejected as totally without factual foundation and contrary to the factual findings of the trial judge. The evidence is clear that these loans were not made to a shell corporation, serving merely as the nominal borrower in order to avoid the impact of the act. Nor was the corporation merely a cloak for individual loans to Ferrara, hiding a deliberate scheme designed to circumvent compliance with the act. See First Mutual Corp., supra, 176 *263 N.J. Super. at 438-439. Plaintiff made these loans to S.H.S. and the loan proceeds were used solely for corporate purposes. Therefore, the corporation loans are exempt from coverage under the act by N.J.S.A. 17:11A-35(a).
The trial judge also held that even if the loan was not within the purview of the Act while in the hands of Peoples National, it came under the Act when the loan was assigned to plaintiff. We disagree. Plaintiff is a second mortgage loan licensee. N.J.S.A. 17:11A-45. He took the note, mortgage and all other loan documents with the same rights as Peoples National. If it had been void in the hands of Peoples National, it would have been equally void in the hands of plaintiff as assignee, even as an innocent holder in due course. See Westervelt v. Gateway Financial Service, supra, 190 N.J. Super. at 618. Here, the loan was not void in the hands of Peoples National and therefore not void in the hands of plaintiff. Notwithstanding his position as an assignee of Peoples National, plaintiff nevertheless is subject to the prohibitions of N.J.S.A. 17:11A-46 and any other prohibitions, requirements or penalties under the Act.
In his oral decision of October 28, 1983, the trial judge denied the Ferraras any relief on their counterclaim. However, the judgment entered on November 19, 1983 only notes that it was entered in the Ferraras' favor on the complaint. In his brief, plaintiff states that the trial judge "denied defendants any recovery on their counterclaim" and found "for the plaintiff on defendants' counterclaim." In their brief, the Ferraras adopt the "procedural history as recited by Appellant."
The trial judge's pronouncement of a judgment in open court on the record constitutes the jural act, and that the later entry of the written judgment is merely a ministerial act memorializing his prior jural act. Mahonchak v. Mahonchak, 189 N.J. Super. 253, 256 (App.Div. 1983); Parker v. Parker, 128 N.J. Super. 230, 232-233 (App.Div. 1974). We therefore construe the judgment entered on November 19, 1983 as including *264 the oral dismissal of the Ferraras counterclaim with prejudice and consider the judgment as a final judgment on both the complaint and counterclaim.
The judgment of the trial court is reversed as to the dismissal of the complaint and the cancellation of the mortgage but is affirmed as to the dismissal of the counterclaim. The matter is remanded to the trial judge for a determination as to the amount due, if any, on the mortgage foreclosure proceedings. We do not retain jurisdiction.
NOTES
[1] Interestingly, the trial judge found that S.H.S. was "not a corporation just to set up as a cover for getting around usury provisions or for getting around the requirements of the Secondary [Mortgage] Loan Act." [Emphasis supplied].